338 SUPREME COURT OF IOWA,

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

THE CITY OF COUNCIL BLUFFS V. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY.

1. **Railroads**: WHAT CONSTITUTES A TRANSFER. The term "transfer," as employed in section 1310 of the Code, refers to the act of removing freight, passengers and express matter, and is intended to cover the removal of cars, with their burdens, from one road to another, as well as the change of their burdens from the cars of one company to those of another.

2. ——: CONSTITUTIONAL LAW: REGULATION OF COMMERCE. Any regulation of the transportation of goods from one State to another, upon railroads, operates as a regulation of commerce, and a statute prescribing such a regulation is unconstitutional and void.

3. ——: ——: ——. Sections 1310–1316, inclusive, of the Code, requiring railway companies connecting with the Union Pacific Railway to transfer their freight, passengers and express matter at Council Bluffs, is in conflict with the Acts of Congress, approved, respectively, July 1, 1862, and June 15, 1866, and cannot, therefore, be enforced. BECK, J., *dissenting*.

4. ——: ——: AUTHORITY OF STATE. While the State may regulate the time or manner of making transfers of the subjects of commerce transported by railway carriage, between points within its own limits, it cannot impose any burden upon transportation between points lying in different States. BECK, J., *dissenting*.

5. ——: OCCUPATION OF STREET: CONTRACT. Since a railway company has the right to occupy the streets of a city with its track, without the consent of the municipal authorities, the city cannot impose conditions upon the railway company by an ordinance granting the right of way, which shall be binding upon the company upon its use of the street and create an obligation for the performance of the conditions.

*Appeal from Pottawattamie Circuit Court.*

THURSDAY, OCTOBER 20.

ON the 4th day of August, 1874, the plaintiff filed its petition in the Circuit Court of Pottawattamie county, praying that the defendant be restrained and enjoined from transporting, delivering and receiving, to and from the Union Pacific Railroad Company, any passengers, freight or express matter at any other point than at the terminus of the defendant's

DECEMBER TERM, 1876. 339

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

railroad within the city of Council Bluffs, and also, "from making any transfer of freight, passengers and express matter to or with any other railroad company, either by delivering or receiving the same at any other place than in this State, at or near the terminus of its railroad in the city of Council Bluffs," and "from operating its railroad to or from any point, other than its terminus within the limits of Council Bluffs," and, likewise, from in any manner violating its alleged contract with the plaintiff "in relation to defendant operating its road within the corporate limits of the city of Council Bluffs, by running its passenger and freight cars beyond its terminus within the corporate limits of the city of Council Bluffs, near the city of Omaha, without the boundaries of the State of Iowa, at a point near the city of Omaha, within the State of Nebraska."

The petition also prays that by proper decree the defendant be required specifically to perform the terms, conditions and provisions of said contract, as set out in an ordinance of the city of Council Bluffs, which is as follows:

"Section 1. *Be it ordained by the Common Council of the city of Council Bluffs*, That it shall be lawful, on or before the first day of June, 1872, for the Kansas City, St. Joseph & Council Bluffs Railroad Company to lay a single track roadway along the north side of Commercial street, from the east side of Baldwin street west to the intersection of Commercial street with the plat of ground known as the Union Pacific Transfer Grounds.

"Sec. 2. In the construction of said railway track, the center of it shall not be more than ten feet from the center of said Commercial street, and shall conform, as near as possible, to the grade established, or which may be hereafter established, as the grade of Commercial street.

"Sec. 3. Said railroad company shall make, and keep in repair, safe and convenient crossings at the intersection of Commercial street with other streets, along said right of way, and not obstruct natural or artificial waterways.

"Sec. 4. Said railroad right of way is hereby granted to enable said company to pass their trains from their present

340 SUPREME COURT OF IOWA,

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

depot, on Bancroft street, to the Union Transfer & Depot Buildings within the corporate limits of the City of Council Bluffs; and, should said Council Bluffs, Kansas City & St. Joseph Railroad Company, their successors or assignees, seek, at any time hereafter, to transfer their freight or passengers on their east and west bound trains, beyond the corporate limits of the city of Council Bluffs, then all rights and privileges hereby granted shall be forfeited by said railroad company, and revert to the city; provided, further, this grant shall not be deemed exclusive, but the city shall, at all times, have the right to use the said Commercial street as may be deemed requisite in laying down gas pipes, sewerage pipes, or constructing ditches for the drainage of the city.

"Sec. 5. This ordinance to take effect and be in force from and after publication, according to law, at the expense of said Kansas City, St. Joseph & Council Bluffs Railroad Company.

"Approved March 2, 1872."

The petition alleges that defendant accepted the conditions and terms of this ordinance and constructed its road upon the streets named therein; that the ordinance was passed in order to grant to defendant the right of way to enable it to extend its road to the transfer grounds of the Union Pacific Railroad Company within the city, which was necessary for the more convenient transfer of freight and passengers from one road to the other. Prior to the passage of the ordinance, defendant's railroad had been completed and was in operation to a point within the corporate limits of the city of Council Bluffs.

It is alleged that, in violation of this ordinance and the alleged contract existing between the parties by virtue thereof, and of the laws of the State of Iowa, the defendant does transfer and deliver passengers and express matter at a point beyond the corporate limits of the city of Council Bluffs, and beyond the limits of the State, and within the limits of the city of Omaha, in the State of Nebraska, and that passengers and express matter are transferred to defendant's road at the same point, and, likewise, that the defendant is running and operating its freight and passenger trains

to the city of Omaha, and there transfers passengers, freight, and express matter to the Union Pacific Railroad Company, and also receives passengers, freight and express matter from said railroad, and other railroads.

The following act of the General Assembly of Iowa was passed and duly published February 29, 1872 (see Chap. 6, Laws of 1872; Code, Secs. 1310, 1311, 1312, 1313, 1314, 1315 and 1316):

"AN ACT Requiring specified Acts and Duties of Railroad Companies, and providing certain Remedies for the Enforcement of the same.

" Section 1. *Be it enacted by the General Assembly of the State of Iowa,* That all railroad companies, their successors, assigns, or lessees, that have been, or may hereafter be, incorporated under the laws of the State of Iowa, that operate, or may hereafter operate a line of railroad in this State, terminating at or near the city of Council Bluffs, in the State of Iowa, and making a connection with any railroad, which, either by its charter or otherwise, extends to a point on the boundary, or within the limits, of the State of Iowa, be and they are hereby prohibited from making any transfer of freights, passengers or express matters, to or with any other railroad company, at or near such terminus—either by delivering or receiving the same—at any other place than in the State of Iowa, at or near the said point at which the said railroad, extending to the boundary of the State of Iowa, terminates.

" Sec. 2. Every railroad company, its successors, assigns, or lessees, which, by its charter or otherwise, has its terminus at any point on the boundary or within the limits of the State of Iowa, or which has authority to bridge or ferry the Missouri river, for the purpose of having a continuous line of its road, and for connecting with other railroads in the State of Iowa, is hereby prohibited from making any transfer of freights, passengers or express matters to, or with, any other railroad company, either by delivering or receiving the same at any other place than in this State, at or near its legal terminus; and every such company, extending to the boundary, or within the State of Iowa, or having the authority to bridge or ferry

342        SUPREME COURT OF IOWA,

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

said Missouri river, shall erect and maintain at or near its legal terminus, within the limits of the State of Iowa, all its depots, stations, and other buildings necessary for such transfer.

" Sec. 3.   Every railroad company, its successors, assigns, or lessees, which has heretofore made, or which shall hereafter make, any contract with any municipal corporation in this State, is hereby prohibited from, in any manner, violating any of the provisions of such contract; and every railroad company, its successors, assigns, or lessees, which has heretofore made, or which shall hereafter make, any contract with any municipal corporation in this State, is hereby required to perform each and all of the provisions of any and every such contract, specifically as agreed therein, and it is hereby made its duty so to do.   In every case in which any such municipal corporation has complied with its obligation relating to such contract at any stage of the progress of its fulfillment, so far as it has agreed to do, such municipal corporation shall not be required to furnish any further tender or guarantee of compliance on its part, in order to secure its rights in the courts; but in case anything remains to be done by such municipal corporation under such contract, after the completion of the same on the part of the railroad company contracting therewith, then it shall, after the enforced compliance on the part of such company as hereinafter provided, be required to fully comply on its part.

" Sec. 4.   In case of a refusal of any railroad company, its successors, assigns or lessees, to comply with the provisions of section one of this act, or its failure to perform the duties required in the last preceding section, or their doing, or having done, any act at variance with such performance or duties, then the municipal corporation affected thereby, or with which the contract in that particular case was made, may, in an action by *mandamus*, in any court of record in the county in which such municipal corporation is situated, proceed against such company so failing or refusing, and such company shall, on proper proof, be required by such court to perform all the duties required by this act; and the general law for the action

DECEMBER TERM, 1876.          343

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

of *mandamus*, in force in this State, shall apply in such a case with the same force that it does in all other cases in which it is applicable, except as it is herein enlarged.

"Sec. 5.   In case any municipal corporation, affected as before stated, or with which any such contract has been made, should not desire to seek the remedy given in the last preceding section of this act, it may proceed in equity by the action of specific performance, in any court in the county in which such municipal corporation is situated, having jurisdiction in equity, and in case such court should find that a contract had been made, it shall, by decree, require such company so violating, or offering to violate its contract, or failing or refusing to perform the provisions thereof, to specifically perform the same.

"Sec. 6.   Any court or judge, in this State, to whom application shall be made, shall, at the suit of any municipal corporation, as aforesaid, restrain, by injunction, the violation of any provisions of this act, or the provisions of any contract as aforesaid; and in such proceeding, it will not be necessary for such municipal corporation to give a bond.

"Sec. 7.   The remedies provided for in this act shall not be construed to be exclusive.

"Sec. 8.   Any order, decree or judgment, made by any court, in pursuance of any of the provisions of this act, shall be enforced in the usual manner.

"Sec. 9.   The words "railroad company, or companies," in this act, shall be construed to mean, also, the officers, agents, or employes of such company or companies."

The defendant answered the petition by setting up, among other things, that the terminus of its road is within the city of Council Bluffs, where it connects with the Union Pacific Railroad, at a point known as the Union Pacific Transfer Grounds.   It denies the alleged agreement, claimed under the city ordinance, that it was to transfer its passengers and freight as alleged in the petition, and alleges that no contract on that subject is embodied in the ordinance which became binding upon acceptance by defendant of its terms and conditions; that under the laws of the State it had the right to construct its

road upon the streets occupied by it without the consent or action of the city as shown by the ordinance.

The answer further denies that the defendant transfers passengers, freight, or express matter, as alleged, to the Union Pacific Railroad, or to any other railroad at Omaha, and runs its trains to that city. The other averments of the answer need not be stated.

On the 19th day of October, 1874, plaintiff moved for a temporary injunction, as prayed for in the petition. The motion was supported by affidavits, and resisted by counter-affidavits. On the 22d day of the same month the writ was allowed. From this order defendant appeals to this court.

*Sapp & Lyman,* for appellant.

*Montgomery & Scott, James, Aylesworth & Mynster* and *G. A. Holmes,* City Attorney, for appellee.

· MILLER, CH. J.—I. The evidence submitted to the Circuit Court establishes the fact that passenger and express cars used upon appellant's road were, prior to the allowance of the injunction, in the westward bound trains run across the river to Omaha, without any transfer of their burdens being made at the western terminus of appellant's road at Council Bluffs. Its eastward bound trains of passenger and express cars received their passengers and express matter at Omaha, and there was no change of cars at the western terminus of appellant's road in Council Bluffs. The cars of defendant were drawn to and from the terminus of its road over the bridge spanning the Missouri river by the engines of the Union Pacific Railroad Company, or by the engines of a transfer company, whose business, it appears, is to transfer passengers, freight and cars from the transfer grounds in Council Bluffs across the bridge to the depot of the Union Pacific Railroad in Omaha. Both the petition and answer state the eastern terminus of the Union Pacific Railroad to be within the corporate limits of Council Bluffs, at a point known as the "Union Pacific Transfer Grounds," which is also the western

terminus of appellant's railroad. From this point to the depot of the Union Pacific Railroad in Omaha, the cars of defendant with their burdens were transported across the bridge as above stated. It thus appears that the passengers and express matter transported by the defendant were not transferred from and to its cars at Council Bluffs, but were carried in the cars of defendant to and from Omaha. The plaintiff insists that the acts of the defendant in permitting its cars to be thus drawn to and from Omaha as above stated are in violation of the provisions of chapter 6 of the Laws of the Fourteenth General Assembly, prescribing "the duties of railroad companies having *termini* at or near Council Bluffs," and also in violation of an alleged contract between the plaintiff and the defendant by virtue of the ordinance of the city granting the right of way for its road upon certain streets and its occupancy thereof under the ordinance. On the other hand, the defendant maintains that the statute referred to is in conflict with the Constitution of the United States, inasmuch as the State thereby attempts to regulate, interfere with and control commerce among the States, and that the city ordinance imposes no obligation on defendant, in the nature of a contract, to transfer passengers and freights within the city, as it possessed the right, under the laws of the State, to occupy and use such streets with its railroad, without the assent of the city and free from the restrictions and conditions imposed by the ordinance. The case is thus made to present questions involving the validity of the statute of the State above mentioned, and the effect of the city ordinance, which, it is claimed by plaintiff, is violated by the acts complained of in the petition. We will proceed to the consideration of these questions.

The first three sections of the statute in question prescribe the duty of the railroad corporations contemplated therein. The first section applies to railroad companies incorporated under the laws of the State, roads which operate their lines in this State terminating at or near Council Bluffs and making connection there with any railroad extending to a point on the boundary or within the State of Iowa; the second

346          SUPREME COURT OF IOWA,

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

applies also to railroad corporations not organized under the laws of this State, which have constructed railroads terminating within the State, " or which have authority to bridge or ferry the Missouri river, for the purpose of having continuous lines of their road, and for connecting with other railroads of the State of Iowa." Those corporations contemplated in the third section are all such as have made or shall hereafter make "any contract with any municipal corporation in this State." The corporations contemplated in the first section are prohibited therein "from making any transfer of freight, passengers or express matter to or with any other railroad company either by delivering or receiving the same, at any other place than in the State of Iowa," at the point where the connecting railroads terminate. The second section imposes a like prohibition upon the contemplated railroads therein, and requires them to erect and maintain, at the point of termination of their respective roads, within the limits of this State, all depots, stations and other buildings necessary for the transfer required by the statute, within the State. The third section prohibits the corporations referred to from violating any contract made with a municipal corporation of the State, and requires them to perform specifically the obligations imposed by such contract.

The statute, as plainly appears from its language and as disclosed by its history, as well as the public history of the controversy concerning the true point of the eastern terminus of the Union Pacific Railroad, is intended to compel the corporations whose railroads terminate at Council Bluffs to make all transfers with connecting lines inside that city.

It may be well first to inquire as to what are the acts prohibited and required by the statute—what is the meaning of the language, "transfer of freight, passengers or express matter," used in the statute to express the acts required to be done within the city of Council Bluffs? There is little difficulty in answering this question, for the language to be interpreted is of frequent use and well understood when applied to the carrying business of the country. It expresses the act of

1. RAILROADS: what constitutes a transfer.

*removing* freight, passengers and express matter, and, in the connection in which it occurs in the statute, implies the removal of these subjects of transportation from the custody of one common carrier to that of another—from one railroad to another—for the purpose of completing their transportation to the place of destination. This may be, and is usually, done by railroad companies in the prosecution of their business in two different ways. In the one case, passengers and freight are removed from the cars of one company to those of another at the point of connection, and in the other, the cars themselves, with their burdens of passengers and freight, are transferred to and upon the connecting road and the subjects of transportation are thus carried to or toward their places of destination. In the case before us the course last indicated was pursued by the defendant, which constitutes the ground of complaint on the part of the plaintiff. It must be understood that our conclusions as to the law of the case are based upon the state of facts as established by the pleadings and evidence, namely: that the cars of the defendant with their burdens have been and are being transferred at Council Bluffs, the terminus of its road, to another railroad and upon it drawn to Omaha, where they are discharged of their contents, and after being loaded with eastern-bound passengers and freight are returned to the defendant's road. Transfers of passengers and freight from and to the cars of the defendant, from and to other railroads in the manner of transfer first above indicated are made at Omaha instead of at Council Bluffs. We have then the case of two *transfers*, one of cars and their burdens from defendant's railroad to the Union Pacific Railroad at Council Bluffs, the other of passengers and freight, by change of cars, at Omaha. The plaintiff insists that the prosecution of the defendant's business in this manner is in violation of the statute of the State above referred to. That the statute was intended to prohibit such transfers there is no room for doubt.

It becomes our duty now to determine whether this statute is in conflict with the Constitution of the United States. In order to do this, we must first inquire into and deter-

mine, as a matter of fact, the effect of the enforcement of the statute upon the business of defendant in the transportation of passengers and freight. It would necessitate the breaking of bulk of all freights and the change of all cars for passengers, transported by the defendant, at Council Bluffs, in cases where bulk is broken or change of cars is made between the place of receipt by the carrier and the place of destination, where that was beyond the western terminus of defendant's road. It would prohibit the running of a car-load of merchandise carried over defendant's road across to Omaha, although consigned there. The car would have to be unloaded, the goods removed from the car in Council Bluffs, and there re-loaded on a car upon the Union Pacific Railroad in order to be carried over to Omaha. So, also, freight transported from Omaha eastward over defendant's road could not be *there* received into the cars of defendant, but would have to be carried across the river to Council Bluffs and there transferred into defendant's cars.

*2. ——: constitutional law: regulation of commerce.*

As we understand the record, the fact is disclosed that in the changes of cars made at Omaha, of which plaintiff complains in the petition, the destination of the passengers and freight was either west of that city or east of Council Bluffs, depending upon the direction in which the train was moving. If the statute should be enforced an additional change or transfer of cars would be required at Council Bluffs. This would cause delay and impose expense, thus interposing an obstacle to the free and speedy transportation of commerce among the States seeking that channel of communication.

It follows from these considerations that the statute in question is an attempt to impose regulations and restrictions which operate to embarrass and hinder the free and speedy transportation of commerce between the States.

The Constitution of the United States, Art. I, Sec. 8, confers upon Congress the power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The authority here granted extends to all matters involving subjects which pertain to or affect commerce.

Commerce is the interchange or mutual change of goods, productions, or property of any kind, between nations or individuals. Transportation is the means by which commerce is carried on; without transportation there could be no commerce between nations or among the States. Any regulation of the transportation of inter-state commerce, whether it be upon the high seas, the lakes, the rivers, or upon railroads or other artificial channels of communication, affecting commerce, operates as a regulation of commerce itself. It has been so held by the Supreme Court of the United States. *Reading Railroad Co. v. Pennsylvania* (State Freight Tax Cases), 15 Wallace, 232; *Passenger Cases*, 7 How., 283; *The State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 18 How., 421; *Gibbons v. Ogden*, 9 Wheat., 1; *Brown v. The State of Maryland*, 12 Wheat., 419; *Almy v. The State of California*, 24 How., 169.

Taxation upon freights carried by railroad companies, laws requiring the payment, by the master of vessels, of a fixed sum for each passenger brought from a foreign port, those granting the exclusive right to navigate rivers with boats propelled by steam, those imposing a stamp duty upon bills of lading, and those authorizing the building of bridges over navigable rivers, and the like, are held to be regulations of commerce.

A State statute imposing a tax upon all persons leaving the State by railroads or stage coaches, and requiring the corporations or individuals engaged in their transportation to make report of the number of such persons carried by them, and pay the tax imposed, was held to be in conflict with the Constitution of the United States, on the ground that it imposed an obstacle to the free and unobstructed communication and travel of the citizens of the United States in the discharge of their duties as such, and in the prosecution of their lawful business in other States, and in foreign countries. *Crandall v. The State of Nevada*, 6 Wallace, 35.

It will be observed that the State statutes, which, in the cases above cited, were held to be unconstitutional, imposed burdens upon the transportation of inter-state commerce by

the levying of taxes. The same principles upon which these statutes were held invalid apply to statutes creating burdens or imposing restrictions of a different character. Commerce may suffer no more from a law requiring a direct tax to be paid thereon into the State treasury, than from a regulation under which charges will be exacted by individuals, as would be the case of transferring freight from the cars of one railroad to those of another at State lines when the connecting roads form continuous lines over which freight may be carried without change of cars. And a regulation of the State whereby the most speedy transit is prevented may be a greater burden upon inter-state commerce—a greater embarrassment to it, than taxes of the character held invalid in the cases above cited. Celerity in the transportation of passengers and freight is now imperatively demanded by the business of the country; every impediment thereto is a burden upon commerce. State statutes producing such results are, under the authorities cited, clearly in conflict with the Constitution of the United States. Subjects of legislation of this character, which are in their character national, affecting the whole country, or different sections of the country, and confided by the Constitution to the general government, are exclusively within the legislative control of Congress. *Reading Railroad Company v. Pennsylvania*, 15 Wallace, 232; *Cooley v. Port Wardens*, 12 How., 299; *Gilman v. Philadelphia*, 3 Wallace, 713; *Crandall v. The State of Nevada*, 6 Wallace, 35.

The State statute under consideration affects the commerce of the whole country. The Union Pacific Railroad, with which the defendant's railroad and others centering at Council Bluffs connect, is a great thoroughfare over which the commerce and trade of the Pacific States, and to some extent that of Asia, is carried. The defendant's road, and other roads referred to, bear to and from the Union Pacific Railroad the commerce and trade which are national in their character, and in fact, to some extent, also pertain to foreign nations. If any regulations respecting the transfer of freight and passengers in their transit from one State to another upon railroads, or in respect to railroads engaged in the transportation of the sub-

jects of inter-state commerce be necessary, the power to make such regulations is by the Constitution conferred upon Congress. It may do so by enactments establishing a uniform system, which will have regard to the general interest of the commerce of the whole country. State enactments are usually designed to meet local wants and demands; Congressional enactments are such as are required by the whole country. The people of the several States, so far at least as the interests of foreign and inter-state commerce are concerned, must be regarded as one nation, and regulations affecting these interests should be uniform throughout all the States. Inter-state commerce and the transportation necessary to its existence are not local in their nature, but affect the people of all the States. The Constitution of the United States has, therefore, wisely committed to the national legislature the duty of establishing regulations of the character of those prescribed by the statute under consideration.

In our opinion, Congress has enacted regulations upon this very subject which are in conflict with this State statute; this being so, the statute cannot be sustained.

It has been held by the Supreme Court of the United States that upon certain subjects pertaining to commerce, the States, in the absence of Congressional enactments, may adopt regulations; but when Congress has assumed to act upon such subjects, the State enactments conflicting therewith cannot be enforced. *Crandall v. The State of Nevada*, 6 Wall., 35; *Gilman v. Philadelphia*, 3 Wall., 713; *Cooley v. The Board of Wardens*, 12 How., 299.

By an Act of Congress approved July 1st, 1862, 12 U. S. Statutes at Large, 496, U. S. Revised Statutes, p. 1022, § 5257, other railroad companies are authorized to connect their roads with the Union Pacific Railroad or any of its branches. The Act of June 15, 1866, 14 U. S. Stat. at Large, 66, U. S. Revised Stat., p. 1022, § 5258, provides that "every railroad company in the United States   *   *   *   *   is hereby authorized to carry upon and over its road, boats, bridges and ferries, all passengers, troops, government supplies, mails, freight and property on their way from any state to another state, and to

receive compensation therefor, and to connect with roads of other states so as to form continuous lines for the transportation of the same to the place of destination." Under these statutes the defendant is authorized to connect its railroad with the Union Pacific Railroad so as to form a continuous line for the transportation of passengers and freight to the places of their destination. The *connection* indicated by the language of these acts of Congress is that whereby the cars of one road may be transported over the other, so that passengers and freight may be carried as upon a continuous line of railway without change of cars. The provision last quoted expresses this thought by direct and plain language, and the first implies the same, for it is hardly probable that Congress meant no more by the word "*connect*" used in the provision than that freight and passengers may be transferred from the cars of one railroad to those of another. On the contrary, it was intended that the cars themselves, with their burdens, should be transferred from one road to another, so that passengers and freights might be transported from ocean to ocean without change of cars or breaking bulk, as upon one continuous line of road. The purpose of the statutes is evidently in the interest of commerce, intended to promote speedy and unobstructed transportation, and to relieve the products and merchandise of the country of the indirect tax of breaking bulk and re-shipping at the various railroad termini when being transported by rail. Nothing tends more effectually to produce these results than continuous lines for the carriage of commerce. The delay, expense and loss attending the breaking of bulk and reshipment is a serious embarrassment and impediment to commerce. These Congressional enactments, under the interpretation given them, tend to remedy these evils; any other interpretation would destroy their force and defeat their evident purpose.

Under these laws the defendant is authorized to make connection at Council Bluffs, whereby its cars may be transported with their burdens upon the Union Pacific Railroad, or any other railroad, so as to form a continuous line, and to receive and transport over defendant's road the cars of other connect-

DECEMBER TERM, 1876.                353

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

ing roads. This is just what the plaintiff complains of and alleges to be in conflict with the statute of the State. But as that statute is in conflict with the Constitution and laws of the United States, it cannot be supported as a valid law, and confers no right entitling the plaintiff to the relief it has demanded.

It is insisted by appellee that the State statute simply provides the place of transfer, when transfers are made by the defendant; that, as shown by the evidence in the case, transfers are made upon the Union Pacific Railroad at Omaha, where freight and passengers are removed from and to defendant's cars, to and from those of other railroad companies. It is insisted that this transfer should be made at the terminus of defendant's road, and that the State may rightfully compel it. We have seen that defendant has the right to connect with the Union Pacific Railroad, to transfer to and receive from it cars with their burdens. When the cars of the defendant are lawfully received by the Union Pacific Railroad Company, there is no authority possessed by the State to prescribe that after such cars have been transported out of the State upon that road the freight and passengers contained therein shall not be transferred to other cars at any point before reaching their destination. Neither does the State possess authority to prohibit the defendant from receiving cars from the Union Pacific Railroad, wherever their burdens may have been put into them.

If Iowa may, by law, require that bulk of cargoes transported upon the railroads of the State shall be broken; that passengers and freight shall be transferred from and to the cars of such roads at their termini, to and from the cars of other connecting roads, and that cars with their contents shall not be hauled or transported over the said roads in Iowa, which are transported from the roads of other States, laws of the same character may be made by each of the States of the Union. If such powers were possessed by the States, and exercised by them, we would in vain hope for continuous lines of transportation, a thing of the highest importance to all the people of the Union, and of the utmost importance to the

people of Iowa, whose agricultural productions, the great source of our wealth, find a market through channels of transportation wholly within the borders of sister States. The commodities of trade which are brought here from other States are carried upon the same railroads and rivers that bear our productions to market. The principle upon which the statute in question is attempted to be sustained would afford support for legislation by other States which would embarrass the commerce of this State by imposing upon it unlimited burdens. These thoughts commend the wisdom of the constitutional restriction upon the exercise of such powers by the individual States of the Union.

We fully recognize the well settled doctrine that the State, by virtue of its police power, may enact all such laws as may be necessary or proper to protect its citizens in their persons, health and property, to guard them against frauds, impositions and oppressions, even where such laws may in some respects affect persons or corporations engaged in the transportation of foreign or inter-state commerce, such as quarantine and health laws, all laws to prevent the commission of felonies, misdemeanors, or other breaches of the peace, etc. *The Mayor etc. of New York v. Miln*, 11 Pet., 102; *Gibbons v. Ogdon*, 9 Wheat., 1; *License Cases*, 5 How., 504; *Brown v. Maryland*, 12 Wheat., 419; *Passenger Cases*, 7 How., 283; *Fuller v. The C. & N. W. Ry. Co.*, 31 Iowa, 187. The views we have expressed in respect to the validity of the statute under consideration are in no respect inconsistent with the doctrine above referred to. The act is not in the nature of a police regulation, nor confined within the exercise of the police power of the State.

We do not hold that the General Assembly would not have the power to pass laws regulating the time or manner of making transfers of the subjects of commerce transported by railroad carriage from and to points wholly within the State. But this is not the character of the act under consideration. As we have already seen, it would, if given effect, operate directly upon inter-state commerce, creating burdens upon it

*4. ——: ——:*
*authority of state.*

of a character which have frequently been held to be beyond the power of the States to impose.

The act also, by its terms, claims to regulate commerce both within and without the State by *requiring* transfers to be made in Iowa and prohibiting the same being done in Nebraska.

Whether or not we would be required to hold the act to be invalid also under section 30, article 3 of the Constitution of Iowa, which prohibits the passage of special laws where a general law can be made applicable, we do not determine, since counsel have not argued that question.

II.   We will now consider the effect of the ordinance of the city granting the right to defendant to construct its road upon the streets of the city.   It declares that it shall be lawful for defendants to occupy the streets named with its railroad upon the condition, among others, that defendants shall transfer freight and passengers, carried by it, within the city limits.   It is claimed that the occupancy of the streets for the purposes of the railroad, operates as an acceptance of the conditions, and raises a contract whereby defendant is bound to their performance.

5. ——: occupation of street: contract.

Without inquiring whether a contract may exist, under municipal legislation, of this character, binding the grantee of the rights conferred to the performance of the conditions imposed, we are of the opinion that, in this case, no such obligation is created, for the following reasons:  'The defendants, under the law of the State as it then stood, had the right to occupy the street upon which its railroad is constructed, without the consent of the city.   *The City of Clinton v. The C. R. & M. R. R. Co.*, 24 Iowa, 455; *Chicago, Newton & Southwestern R. Co. v. The Mayor of Newton*, 36 Iowa, 299.

It is very plain that if the city, by direct legislation, could not have prevented the occupancy of its streets by defendant's railroad, it could not, by affixing a condition to its assent to such occupancy, defeat defendant's rights under the laws of the State.   As the ordinance of the city conferred no right upon defendant that it did not before possess under the statutes of the State, there is no consideration upon which to base

a contract, even if it be admitted (but which we do not decide) that the ordinance and occupancy of the streets by defendants would, under other circumstances, raise a contract binding the defendant to the performance of the conditions imposed upon it.

It is urged by appellee that the right of way act (Revision, Art. 3 of Chap. 55, p. 218), upon which the decisions above cited are based, will not repeal the provisions of the charter of the city of Council Bluffs, a prior enactment, which confers the control of its streets and alleys upon the city council. But counsel are mistaken in assuming that the city charter took effect prior to the right of way act. That act became a law February 9, 1853. The city charter was approved January 24, 1853, and the last section provided that the act should take effect from and after its publication in certain newspapers named therein. It was never so published, and it took effect under the general provisions of chapter 3, Code of 1851. Under these provisions the city charter went into operation after the right of way act took effect.

Finding the State statute, under consideration, to be in plain conflict with the Constitution of the United States and with acts of Congress passed in pursuance thereof, it becomes our duty to declare the statute of the State invalid and without force as a law. *Stewart v. The Board of Supervisors of Polk Co.*, 30 Iowa, 9, and cases cited.

The order of the Circuit Court allowing the injunction must be

REVERSED.

BECK, J., *dissenting.*—I am unable to concur in the conclusions announced in the foregoing opinion, and will proceed, with brevity, to state the grounds of my dissent:

I. The defendant transfers its passengers and express matter at Omaha, to the cars used upon the Union Pacific railroad. Its cars are hauled from its terminus at Council Bluffs, which is upon the east side of the Missouri river, on the Union Pacific railroad, by the engines of the transfer company, or of the Union Pacific Railroad Company, to Omaha,

on the west bank of the river. The east and south trains are made up of cars to which passengers and express matter have been transferred at Omaha, from the cars of the Union Pacific Railroad Company. Transfers are made at that place to and from the cars of defendant, and its officers have charge of such cars and control their transportation between Omaha and Council Bluffs.

It is not pretended that the roads of defendant and the U. P. R. Co. are, by any contract or arrangement, so united as to form a *continuous* line of railroad for the transportation of passengers and property without change of cars. *There is, in fact, a transfer of passengers and express matter from the cars of one road to the cars of the other as the business of the two corporations is and ever has been managed.* This transfer is at Omaha. The western terminus of defendant's road and the eastern terminus of the Union Pacific railroad are at Council Bluffs, upon the border of this State. The transfer of passengers and property transported by these roads, from one to the other, is made just beyond and without the jurisdiction of Iowa and within the State of Nebraska.

The statute of this State, brought in question in this case, does not require and render obligatory the transfer of freight and passengers, or prohibit the operation of the two roads as a continuous line for transportation without change of cars. It simply prescribes the place of transfer, when transfers of the subject of transportation are actually made from the cars of one road to those of the other. The same is true of the ordinance of the city of Council Bluffs involved in this case. A careful reading of the statute and ordinance cannot fail to carry conviction to the mind of the correctness of this conclusion.

II. Having reached the foregoing conclusions as to the facts disclosed by the record, and the true effect and object of the statute and ordinance brought in question, I proceed to inquire whether they are in conflict with the Constitution of the United States. Art. I, Sec. 8 of that instrument, confers upon Congress power to regulate commerce between the States. I do not doubt that transportation is a constituent of commerce and, therefore, the regulation of transportation

is the regulation of commerce itself. The cases cited in the foregoing opinion, and other decisions of the United States Supreme Court, establish this doctrine. But does the statute of the State under consideration assume to so "regulate commerce" as to usurp authority exclusively vested by the constitution in Congress?

It is, I believe, now the settled doctrine that the States may exercise legislative power, as conferred by their respective constitutions, in all cases but those falling within the following exceptions:

" 1. When the power is lodged exclusively within the Federal Constitution.

" 2. Where it is given to the United States and prohibited to the States.

" 3. Where, from the nature and the subjects of the power, it must necessarily be exercised by the National Government exclusively." *Gilman v. Philadelphia*, 3 Wal., 713.

It clearly appears from the context of this quotation, that the court must be understood, by the language of the first and second paragraphs, to declare that the power must be exclusively conferred upon the United States, or prohibited to the States by express terms. Justice STORY, in *Houston v. Moore*, 5 Wheaton, 1 (49), announces the doctrine that powers, granted by the Constitution to the Federal Government, "are never exclusive of similar powers existing in the States, unless where the Constitution has *expressly*, *in terms*, given an exclusive power to Congress, or the exercise of a like power is prohibited to the States, or there is a direct repugnancy or incompetency in the exercise of it by the States." It cannot be claimed that the Constitution, in express terms, confers upon Congress the power to legislate upon the subject of the State statute under consideration.

In *Gilman v. Philadelphia*, *supra*, a case involving the construction of the section of the constitution conferring power upon Congress to regulate commerce, it is declared that "whether the power, in any given case, is vested exclusively in the general government, depends upon the nature of the subject to be regulated." In another case, *The Reading*

*Railroad Co. v. Pennsylvania,* 15 Wall., 232, the following rule is laid down, which, applied to the subject to be regulated, enables us to determine whether the power to regulate is exclusively within the United States. It is this: "Whenever the subjects, over which a power to regulate commerce is asserted, are in their nature national, or admit of one uniform system or plan of regulation, they may justly be said to be of such a nature as to require exclusive legislation by Congress."

We must inquire what is the subject of the regulation prescribed by the statute of Iowa which is now before us? I have answered the question in the foregoing statement of the effect and object of the law. It is the place of making transfers of property carried by railroads, from the cars of one road to those of another. It must be admitted that this pertains to and affects transportation which, as I have said, is a constituent of commerce. But it is not, in fact, a regulation of transportation—commerce, which is within the class of subjects that are national in their character, or admit of one uniform system. It belongs to that class of subjects which pertain to the duty of corporations exercising the functions of common carriers, and to the authority of the State to prescribe rules governing the manner of the exercise of power and rights conferred by the State upon such corporations. It is clearly within the police power of the State. Of this class of subjects may be reckoned regulations fixing the rate of speed of cars, prescribing a tariff of charges, forbidding the running of trains on Sunday, and providing protection for persons and property transported upon railroads.

Any city of the State may prescribe by ordinance the place at which passengers and freight shall be received and discharged by railroads operating within its limits. It may also fix a place for the transfer of passengers and freight voluntarily made by one railroad to another, each having its terminus within the city. Surely the State may do the same thing; when transfers are made, it may prescribe the place thereof. And this alone is the object and effect of chapter 6, Acts, 1872, the statute in question in this case.

Our Code is not wanting in provisions affecting railroads similar in character and founded upon the very authority under which this statute is enacted. Section 1292 of the Code is in this language: " Any railway corporation operating a railway in this State, shall, on request, permit the railway operated by any other company to connect therewith,· and shall draw over its railway the cars of such connecting railway, at reasonable terms, and for a compensation not exceeding its ordinary rates." Here is a statute regulating transportation, a constituent of commerce, whereby a railroad company, unwilling to operate its road in connection with another as a continuous line, may be compelled to do so at the will of the corporation owning the connecting road. The provision prescribes the duty of the corporation required to connect its road with another, and the manner of discharging its functions as a common carrier, and directs the exercise of its corporate powers conferred by the State. An unwilling railroad company is compelled to draw the cars of another corporation for the public good. The statute pronounced unconstitutional by the majority of this court, requires unwilling railroad companies to transfer the subjects of transportation at such places as the legislature has determined the public good requires, or is demanded by sound public policy. I am unable to distinguish between the principles of the respective enactments, or to discover a source of legislative power that is not common to both. Surely my brothers are not prepared to hold the statute just quoted, and all other enactments based upon the same constitutional principles, which are numerous, void because they are in conflict with the Federal Constitution.

· III. The objection urged against the statute on the ground that it is intended to and does operate without the limits of the State, and is, therefore, an attempt of the State to exercise authority beyond its jurisdiction, is, in my opinion, not founded upon facts. The statute requires defendant, a corporation created under the laws of the State and operating a railroad within its borders, to make its transfers, where transfers are made, in the State. The corporation and road are

subject to the authority of the State, and the act required is to be done within the State. Surely, then, the statute cannot be said to operate out of the State. Its consequences, it is true, may extend beyond the State limits, and the same thing is true, in a greater or less degree of almost all statutes. All laws of the State affecting railroads having connections or parts of their lines out of the State, in their consequences reach beyond our borders and affect the connections or portions of the road found there.

It is urged that, if transfers which are now made at Omaha must, under the statute, be made at Council Bluffs, this operates to forbid transfers at the city first named, and, therefore, has effect out of the State. But, if it prevents transfers at Omaha, this is accomplished through the consequences of the enforcement of the statute, and not in obedience to the laws of the State. The enforcement of the statute within the jurisdiction of the State creates a necessity which operates upon and controls subjects and persons without the the borders of the State. Our laws and police regulations affecting trade thus extend, in their consequences, to every State and country with which our people hold commercial relations. I forbear to illustrate the argument by showing any of the numerous instances where the laws of the State, in their consequences, affect persons and property in other States. Due reflection will bring to mind such instance anologous to the case under consideration, and will evolve and apply arguments in support of the position I maintain.

IV. Upon the subject of the statute—the transfer of passengers and freight by railroads to connecting lines of transportation, Congress has assumed no control. The act of June 15, 1866, referred to in the opinion of the majority, provides for the connection of railroads, "so as to form continuous lines for the transportation (of freight and passengers) to the place of destination." The law is within the scope of the constitutional power of Congress, being a regulation of inter-state commerce. But it makes no provision as to the place or manner of the connection of railroads; neither does it make such connections obligatory. It authorizes connections, which no

State may forbid, but it extends no farther. The acts of July 2, 1864, authorizing the construction of the Omaha bridge, and of February 24, 1871, empowering the Union Pacific Railroad Company to issue bonds for that purpose, with other statutes pertaining to the subject, all of which were cited by counsel for defendant, and are, I believe, referred to in the foregoing opinion, contain nothing upon the subject under consideration different in effect from the act first referred to above. They do not enforce or require the connection of railroads so as to form continuous lines, nor forbid transfers of the subjects of transportation from the cars of one railroad to those of another. No regulations are prescribed governing the place and manner of such transfers. As this is a subject of legislation not within the Federal jurisdiction it was not intended to be touched in any of the various enactments just enumerated, each of which presented the occasion for and an invitation to the exercise of the power over it, were that power possessed by the General Government.

V. In my opinion the conclusion of fact, announced by my brothers in the foregoing opinion is incorrect, namely, that, if the statute in question be enforced, two transfers instead of one would, or might be required, one at Omaha and the other at Council Bluffs, resulting in delays and expenses to transportation beyond what is imposed by the transfer at Council Bluffs alone, which is required by the statute to be made by defendant. It is insisted that an obstacle to free commercial communication would be thus created. I am free to declare that I could look in no friendly spirit upon any statute, either state or national, the design or effect of which should be to fetter commerce and impose unjust and unnecessary restrictions and prohibitions upon the free, cheap and expeditious transportation of persons and property. I would eagerly seek, and earnestly hope to find, some constitutional ground upon which such legislation could be declared void. But whether it can be found, I am not now called upon to determine, for I have a clear and most positive conviction that no such objection, in fact, exists to the statute now under consideration. A brief statement of the facts of the case dis-

closed by the record will, in my opinion, render plain the correctness of my position.

The eastern terminus of the Union Pacific Railroad is in Council Bluffs, and the cars of defendant are drawn over the track of that road, which extends across the bridge, from the depot of defendant in Council Bluffs to Omaha. No other railroad extends from Omaha to Council Bluffs. The Union Pacific Railroad Company has a depot, station and grounds for the transaction of business at Council Bluffs, which are called Transfer Grounds. The distance from the ground to the Union Pacific depot at Omaha is not shown by the record, but we are warranted in inferring therefrom, that it is not to exceed two or three miles. The subjects of transportation involved in this action are such as are carried in defendant's cars to and from Omaha, and there transferred to the cars of the Union Pacific Railroad Company. Now, from this statement of facts, it is obvious that freight and passengers destined for Omaha are not within the contemplation of the statute, for when they reach that city in defendant's cars they are not transferred. Arriving at the place of destination they require transportation no farther and therefore it is impossible to imagine that they are put upon the cars of any other railroad. As to freight and passengers destined to Omaha, the defendant's road and that of the Union Pacific Railroad Company form a continuous line. The statute, as I have shown, cannot apply thereto. Indeed, I understand, from the record, that plaintiff complains only of the action of defendant in regard to the subjects of transportation carried beyond Omaha; certain it is, of nothing else can it complain. Passengers and freight, then, destined for Omaha are not transferred at Omaha, and the statute does not require that they should be transferred at Council Bluffs. As to these it is plain that the statute is not obnoxious to the objections under consideration.

VI. In regard to the passengers and freight which must be transported upon the Union Pacific Railroad in order to be carried to their destination the case is equally plain. If, as required by the statute, they be transferred to the cars of that road at Council Bluffs, there can be no other transfer. If the

Union Pacific Railroad Company cause them to be taken out of its own cars and put into others owned by it or operated upon its road, at Omaha or any other point upon its road, this would not be a transfer according to the meaning of the word as used in the statute and understood by all men when applied to the business of railroads. There can exist no necessity for such a course of business, and there can be no presumption that it ever was or ever will be pursued. But if pursued, whether wantonly or for some sufficient reason, it would not be brought about because of the transfer required by the statute at Council Bluffs.

It is not claimed that the legislature of Nebraska or Congress has enacted any law requiring the Union Pacific Railroad Company to change its cars at Omaha. Such legislation, I presume, would hardly be attempted by the State named, as the corporation, which would be affected thereby, derives its existence from Congressional legislation, and Congress, it cannot be supposed, would thus place restrictions and impediments upon inter-state commerce. As such legislation can only exist in imagination, it is vain to inquire into its validity. This subject is only noticed here for the reason that future legislation of this character, whereby a transfer would be required by law to be made in Omaha, is urged as the ground for claiming that the enforcement of our statute would occasion the delay and expense incident to two transfers instead of one.

It is an appropriate connection here in which to remark that, in my opinion, the State statute does not forbid the Union Pacific Railroad Company to receive the cars of defendant at Council Bluffs to be drawn to the places of destination of the property with which they are ladened. In that case there would be no transfer of freights or change of cars. The transfer of cars, as explained in the opinion of the Chief Justice, would occur at Council Bluffs, and if the law applies to that act—if the term *transfer* used therein relates to the act of changing cars from one road to another, it would be done at Council Bluffs; in fact, it could not be done at Omaha for defendant's road does not extend to that city. The law in such cases, if applicable thereto, would not be violated.

VII. I will next consider the case of freight and passengers having points of destination beyond Omaha, or transportation from such points upon railroads, other than the Union Pacific, to and from Omaha, which are carried through Council Bluffs. These roads, it will be remembered, do not reach Council Bluffs, and therefore do not connect with defendant's road.

It will be readily understood that, if the subjects of transportation are carried upon these other roads, the Union Pacific and defendant's road, without change of cars, such a course of business would not be within the contemplation of the statute in question, for the roads would be operated as continuous lines, and there would occur no transfers provided for by the statute.

It will be readily seen that in cases where the railroads referred to are not operated as continuous lines, and there is in fact a transfer of freight and passengers from and to the cars of defendant before their destination is reached, the requirement that such transfer be made at Council Bluffs does not create a necessity, nor require, for convenience of business, another transfer to be made at Omaha. If freights and passengers destined for points east of Council Bluffs are carried to Omaha by the Nebraska railroads and there transferred to the Union Pacific railroad, I discover no escape from the conclusion that they must be regarded, when they reach Council Bluffs, as all other subjects of transportation carried by that railroad. Freight carried by defendant cannot be transferred to the Nebraska roads (other than the Union Pacific), because there is no connection between them. Freights and passengers transferred in either direction, for this reason, must, of necessity, pass into the hands of the Union Pacific Railroad Company, being transferred to and from it. Now the fact that the subjects of transportation are transferred from or to the cars of a connecting railroad by the Union Pacific, cannot be the grounds of an objection to the transfer at Council Bluffs instead of Omaha, when such transfers are actually made to and from the cars of roads terminating at Council Bluffs. It will cause no greater expense and delay

for the Union Pacific company to draw the cars of the connecting Nebraska road to Council Bluffs, its terminus, for the purpose of making transfer there, than to take defendant's cars to Omaha for that object. The law, then, imposes no necessary expense or delay. It is true that the Union Pacific company may, if the transfer is made at Council Blluffs, require another to be made with its connecting lines at Omaha. But as neither the course of business generally pursued by railroad corporations and other carriers, nor the interests understood to prompt the action of the Union Pacific Railroad Company in the transfer controversy, which will be presently referred to, can require transfers, in any case, to be made both at Council Bluffs and Omaha, but on the contrary forbid it, I cannot presume that it will ever be done. As before remarked in reference to future legislation, it would be vain to consider the power and right of the Union Pacific Railroad Company to pursue such a course, or its effects upon commerce, where its future occurrence is so highly improbable.

VIII.    It is a matter of notoriety, the world over, that this transfer controversy has its origin in interests growing out of and connected with the bridge over the Missouri river, upon the line of the Union Pacific Railroad. ' A great part of the commerce between the Pacific States and the rest of the Union must be carried over this bridge. It is brought to Council Bluffs or carried thence by several important railroads, among them the line owned by the defendant. Westward of the Missouri river it is carried by the Union Pacific Railroad. The bridge was built by the Union Pacific Railroad Company under authority conferred by Acts of Congress of July 2, 1864, and Februry 24, 1871. 13 U. S. Statutes at Large, 360; 16 Id., 430. By the last named statute the Union Pacific Railroad Company was " empowered, governed and limited by the provisions " of the Act of July 25, 1866, authorizing the building of a railroad bridge at Quincy, in the State of Illinois. 14 U. S. Statutes at Large, 244. The act last mentioned authorizes all trains of all railroads terminating at the place where the bridge is erected, Council Bluffs, to cross it "for reasonable compensation to be made

to the owners of the bridge." If the trains upon the Iowa roads terminating at Council Bluffs are required to make connections at Omaha, and transfers are made there, tolls are levied thereon by the Union Pacific Railroad Company on account of the use of the bridge. If the point of connection and transfer be at Council Bluffs, the Union Pacific Railroad Company's trains cross its own bridge and it thereby loses the toll which, if other roads crossed the bridge, it would levy upon its connecting roads. The reason why the Union Pacific Railroad Company refuses to operate its road to its eastern terminus at Council Bluffs and requires transfers to be made at Omaha is thus made plain. But the grounds upon which defendant submits to this unjust requirement do not appear.

The question of the place of transfer is one of expense and exaction upon the commerce of the country. But this exaction occurs not through transfers made at Council Bluffs; it is levied by means of the transfers at Omaha. And yet I am surprised by the argument, sanctioned by the foregoing opinion of my brothers, that the transfer at Council Bluffs, required by the legislation of this State, imposes expense and burdens upon commerce.

The fact that Omaha is sought to be made practically the eastern terminus of the Union Pacific Railroad, by the enforcement of transfers there, for the purpose of levying exactions and tolls upon the commerce transported over the bridge, is disclosed in the legislative history of this State pronounced unconstitutional by the majority of this court. From that source I am authorized to derive judicial knowledge of the fact. The object of the law, as I understand it, is to prevent the evil thus threatened, by the unjust and unwarranted levy of tolls upon inter-state commerce.

It is my opinion that the judgment of the Circuit Court ought to be affirmed.

ON REHEARING.

ADAMS, J.—Upon a rehearing of this case we have to say that we are of the opinion that the decision of this court was correct.

The main question discussed by counsel is as to whether the act of the legislature of February 29, 1872, conflicts with Article I, Section 8, of the Constitution of the United States, and with the Acts of Congress passed in pursuance of the same. The Constitution confers upon Congress the power to regulate commerce among the several States. The Act of Congress of June 15, 1866, provides that every railroad is authorized to connect with roads of other States so as to form continuous lines. The first section of the act of the legislature in question provides in substance that the defendant shall not transfer freight or passengers to, or receive them from, any other railroad near its terminus at Council Bluffs except within the State of Iowa. The object of this section seems to be to prevent transfers at Omaha between the defendant and the Union Pacific Railroad Company.

The second section goes somewhat farther. It provides, in substance, that the Union Pacific Railroad Company shall make no transfers of freight or passengers to, or receive them from the defendant *at any place*, except near its terminus, in Iowa.

The city of Council Bluffs passed an ordinance providing, in substance, that no transfers should be made between the defendant and the Union Pacific Railroad Company, except within the corporate limits of the city of Council Bluffs. The act of the legislature in question prohibits the defendant from violating said ordinance.

We have, then, two questions: 1. Was it competent for the legislature to prohibit all transfers between the two companies except at Council Bluffs? 2. Was it competent for the legislature to prohibit all transfers between the companies at Omaha? In answering these questions we think that only one principle is involved, and, therefore, we may treat them as substantially the same.

Under the said act of Congress it was competent for the defendant to make whatever arrangement it should see fit with the Union Pacific Railroad Company for running its cars over the Union Pacific road. It was authorized to connect so as to form a continuous line. This cannot mean simply that it was

authorized to transfer freight and passengers to the Union Pacific road, for that would not make a *continuous line* in any proper sense of those words. It must mean that the defendant was authorized to transfer its cars with their freight and passengers to the Union Pacific road. Now this is precisely what the defendant has done; and of this the plaintiff cannot complain for two reasons. It was not only authorized by the said act of Congress, but such transfers have in fact been made at Council Bluffs, the very place where the act of the legislature provides that they should be made.

But, it seems that while the cars with their burdens have been transferred to the Union Pacific road at Council Bluffs, a further transfer, to-wit: a transfer of the burdens to the Union Pacific cars has been made at Omaha. This last transfer seems to be the real ground of the plaintiff's complaint. It must be so, because the first transfer was made where the plaintiff claims that all transfers should be made. Now, in regard to the transfer at Omaha, it is evident that there is a sense in which it might be said to be no transfer at all. This would certainly be so if the transfer of the defendant's cars with their burdens to the Union Pacific road was a transfer of them to the Union Pacific Company. There could not be a transfer to the Union Pacific Company of what it already had.

But, we will suppose that a transfer of the defendant's cars with their burdens to the Union Pacific road was not a transfer of them to the Union Pacific Company; and, indeed, we can conceive of an arrangement whereby the defendant might run its trains over the Union Pacific road, or a portion of it, without any transfer to that company.

The question, then, is as to whether the defendant can be prohibited from transferring to that company, except at Council Bluffs. It is evident that the defendant's cars may be used to carry freight or passengers to Omaha, or to any other point on the Union Pacific road, provided the freight or passengers are destined to those points. In such case there would be no transfer to the Union Pacific Company. Now, the plaintiff claims that if the defendant's cars can be used to carry freight

or passengers to their destination on the line of the Union Pacific road, it is all that defendant can properly ask; and that if defendant desires to transfer to the Union Pacific Company, it may properly be required to do so at Council Bluffs.

The restriction imposed by the act of the legislature would not, we presume, ordinarily operate as a burden upon interstate commerce, but if it may do so it cannot be upheld. What, then, may be its practical operation? Suppose that defendant's cars are destined to Cheyenne, loaded partly with freight destined to Cheyenne, and partly with freight destined to San Francisco. But for the act in question, the cars could go through to Cheyenne with all the freight, and the San Francisco freight could there be transferred. But, under the act, all the San Francisco freight must be culled out and transferred at Council Bluffs, and the defendant's cars be taken to Cheyenne, if at all, only partially loaded. The same cars must return empty or find freight not in the hands of the Union Pacific Company.

Again, it seems certain that the defendant must often have empty cars at Omaha, which have been used in transporting freight to that city from towns and cities along the defendant's road. If the defendant's cars at Omaha can receive freight at Omaha from the Union Pacific Company destined to towns and cities along the defendant's road, it saves the Union Pacific Company the expense of transporting it to Council Bluffs, in order to transfer it to the same cars there. Many suppositions can be made, showing the tendency of the act in question to impair the value of the privilege conferred by Congress upon the defendant of so connecting with the Union Pacific road as to make a continuous line.

We will make only one other supposition. The defendant might, by some arrangement, send its cars with freight to some point on the Union Pacific road by a route different from that by the way of Council Bluffs. The act in question is sweeping enough to prevent the Union Pacific Company from receiving the freight at such point. It is abundantly manifest that such restriction cannot be upheld.

Freight should be permitted to seek its own place of trans-

DECEMBER TERM, 1876. 371

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

fer. To this it may be said that railroad companies will not always allow it, but will sometimes sacrifice the interests of commerce to promote some local interest. We think, how-ever, that any attempt by law to impose restrictions in behalf of some other local interest will not only not remedy the difficulty but may increase it in many ways. And, so far as inter-state commerce is concerned, as Congress has attempted to regulate and promote it by providing for the use of differ-ent railroads as continuous lines, no State legislation can be permitted to interfere by any action which may possibly dis-courage or impair such use.

It is urged by the plaintiff, however, that the conclusion at which this court has arrived is inconsistent with the act of Congress which provides that the Union Pacific R. R. Co. shall operate its road to the western boundary of Iowa as a continuous line. This would be so if the running of trains by the Union Pacific company to the western boundary of Iowa would prevent transfers between it and the defendant else-where; or if transfers between it and the defendant elsewhere would prevent the running of trains by the Union Pacific Company to the western boundary of Iowa. The object of the statute, doubtless, was to obviate the necessity of all trans-fers being made at some point west of the western boundary of Iowa. To our mind it is entirely consistent to require the Union Pacific Company to run its trains to the western boun-dary of Iowa, and at the same time allow such transfers between it and the defendant at other points as the interests of commerce may require.

BECK, J., dissenting.—I. No fact, argument or authority has been brought to my attention upon the rehearing of this case which has diminished the confidence I possessed at the time of the announcement of the decision of this court, in the views and conclusions presented in my dissenting opinion then filed. The reargument on the part of defendant, while of admitted ability, has developed nothing new in the case which, in my opinion, supports the decision of the majority of the court. I have, upon the rehearing, reviewed the whole

ground of controversy, and though anxious to concur with my brothers find myself unable to do so. The fact that three of the Justices now on the bench, who have taken their seats here since the decision of the cause, concur with the three who announced that decision, has stimulated me to greater care in the re-investigation of the case, and begotten, I must confess, a strong desire on my part to unite with them in their views of the law. But this inducement, strong though it be, has not, as it should not, overcome the convictions of my mind, planted upon the most thorough and careful consideration of the questions of which I am capable.

The facts and law of the case, as I understand them, have hedged in the path I have followed; from it I could not depart.

II. I do not think it necessary to adduce now further arguments supporting the conclusions of my dissenting opinion heretofore filed. I shall confine myself to pointing out what I conceive to be errors and misconceptions of facts in the preceding opinion of Mr. Justice ADAMS. It is admitted in his opinion that the restrictions imposed by the statute of the State in question would not " ordinarily operate as a burden upon inter-state commerce." But, it is said, "if it *may* do so it cannot be upheld." The opinion then proceeds to present certain supposed cases wherein the restrictions would have such effects. These cases I will proceed to notice, and I confidently expect to show that they are purely imaginary and will never occur in the prosecution of the business of the railroads, if common sense and the best interests of the railroad corporations control their affairs.

The first is the case of defendant's cars, destined for Cheyenne, loaded with freight, partly consigned to that place and partly to San Francisco. It is not the custom of the managers of railroads to load cars with freight destined to several towns, but freight for the several stations is put in separate cars. No exception to the rule exists, except in case there is not enough freight, at the place where the car is loaded, consigned to a given station to fill it. Now, my brother's supposed case is unfortunately chosen, for it is hardly probable that there

## DECEMBER TERM, 1876. 373

The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.

ever will such a thing occur—that less than a car load of freight in one train will ever be sent through to San Francisco. But suppose such a thing should happen, would it not be more reasonable and less expensive, if it should be put in a car with Cheyenne freight, to carry it through to San Francisco, discharging the Cheyenne freight, and if it be necessary, supplying its place with freight destined from that place to San Francisco? Surely, it would.

In the case supposed by my brother, there would be more transfers and handling, and consequently more expense, than by sending the San Francisco freight in a through car and completing its burden with way freight at Cheyenne. In the case supposed by Mr. Justice ADAMS, the car returns empty from Cheyenne if it cannot be loaded with freight not in the hands of the Union Pacific Company. Surely, it cannot be thought the cars could or would be loaded with freight brought by the Union Pacific Company from points west of Cheyenne, thus making a transfer there from its cars to those of defendant. The case supposed, it will be readily seen, involves delay and expense in transferring freight, thus breaking a continuous line of railroad demanded by the wants of commerce and required by the laws of Congress under which the Union Pacific Railroad Company was organized.

III. The case of empty cars of defendant at Omaha equally fails to answer the purpose for which it is introduced.

If these cars are ladened with freight, not brought to Omaha by the Union Pacific Company, to be transported to points on defendant's road, it will not be a violation of the State law in question. If they are loaded with freight from the cars of the Union Pacific Company, brought from the west, all there is of it is, that the last named company permits its cars to be idle while defendant's are used between Omaha and Council Bluffs. But, how this can be regarded as a burden on commerce, I fail to understand.

It affects the earnings of the two companies; one or the other must carry the freight from Omaha to Council Bluffs. If defendant does not, it suffers loss. If the Union Pacific Company does not, it is the loser. But, how commerce is bur-

dened in either case, or more in one than in the other, in my judgment, cannot be made to appear.

IV.   The last case put by Mr. Justice ADAMS is not within the contemplation of the statute in question.   If defendant's cars reach Kearney Junction by the Burlington & Missouri River Railroad, and their freights are there transferred to the Union Pacific Railroad, which is the case supposed, such transfer is not forbidden by the statute.

The first section provides for transfer at the terminus of the roads.   The second section does not forbid the Union Pacific to transfer freight to roads in Nebraska, to the Burlington & Missouri Railroad, for instance.   No construction forbidding such transfer can be placed on the act.

The statute therefore does not forbid the course of business contemplated in the third case supposed by Mr. Justice ADAMS.   The cases to which the statute is at all applicable, in my judgment, are those in which burdens are imposed upon commerce by the course of business pursued by the railroad corporations.

Commerce requires unbroken, continuous lines of transportation.   The statute of the State tends to secure such a line over the full length of the Union Pacific Railroad, and forbids it to be broken within two or three miles of the eastern terminus of that road, for the purpose of imposing a tax upon commerce by the levy of bridge tolls upon the cars of other corporations.   The course of business advocated by my brother imposes burdens on commerce; the law of our State, which this court pronounces void, removes them.

V.   It is a familiar doctrine of the courts that a statute will not be declared unconstitutional except in clear cases. Doubts are to be solved in favor of the validity of a statute, and its incompatibility with the constitution must be obvious and admit of no doubt.

The statute when capable of different interpretations must receive such a construction that it may be upheld.   The opinion of Mr. Justice ADAMS holds the law of the State unconstitutional by applying it to imaginary cases, which we have no warrant in saying ever have or ever will occur; by construing

it to impose burdens on commerce, when it in fact forbids them, and by an interpretation extending it to acts not within its purpose or the purview of its language. The opinion, in my judgment, disregards the doctrine to which I have just referred.

VI.  It is not claimed that the statute of the State encroaches upon ground occupied by Congressional enactments. Under the charter of the Union Pacific Railroad Company, and other acts of Congress, the company is required to operate its road as a continuous line. It has been held by the United States Supreme Court, in *Union Pacific R. R. Co. v. Hall et al.*, 91 U. S. (1 Otto.), 343, that the eastern terminus of the road is at Council Bluffs, and that it must be operated as a continuous line to and from that city. In that case a *mandamus* issued by the Circuit Court is sustained, which requires the road to be so operated, and forbids transfers to be made at Omaha. Thus, by the mandates of the Federal Court, the Union Pacific Railroad Company is forbidden to do the act which the State statutes declares shall not be done by the defendant. It will be remarked that the acts of Congress reach only the Union Pacific Railroad Company; they do not forbid other railroad companies to make or receive transfers to or from the Union Pacific Company. The law of this State, in imposing a duty or inhibition on defendant, does not include a subject legislated upon by Congrees. Its validity, therefore, is not affected by a Congressional enactment extending to the same subject.

While the decision in this case involves important constitutional doctrines and the exercise of the highest judicial powers, it will, I conceive, be of little practical importance.

The statutes of the United States, as interpreted and enforced in *Union Pacific R. R. Co. v. Hall et al.*, *supra*, compel the Union Pacific Company to operate its road to Council Bluffs as a continuous line and forbid it to transfer freight at Omaha. If it can make no transfer at Omaha, the right of the defendant secured by the decision of this court, to receive freight transferred there, will be a barren right that cannot be exercised.