## CARTON & CO. v. ILLINOIS CENTRAL RAILROAD CO.

1. **Railroads:** LEGISLATIVE REGULATION OF RATES: INTER-STATE COMMERCE: CONSTITUTIONAL LAW. If the language of chapter 68, laws of 1874, is to be construed so as to include contracts for the transportation of freights to points without the State, then it is repugnant to Aricle 1, section 8, of the Constitution of the United States, which confers upon Congress the "power to regulate commerce with foreign nations and between the states," and is then for that reason, in that particular, void, and will not support an action brought to recover of the defendant freights charged in excess of the rates provided in that act, on goods shipped from Ackley, in this State, to Chicago, in the State of Illinois, on a contract for through shipment at a given rate per car load.

2. ——: ——: ——: LEX LOCI CONTRACTUS. While it is true that the contracts of shipment set out in this case are entire contracts, and while it may be conceded that the laws of this State enter into and become a part of contracts made within the State, yet this doctrine must be limited to laws which are valid; and since the law relied on if applicable to these contracts at all, is so far void, it cannot enter into and become a part of those contracts. BECK, J. *dissenting.*

*Appeal from Hardin Circuit Court.*

Wednesday, July 12.

This is an action to recover certain alleged excessive freight charges paid by the plaintiff to the defendent for transporting grain from Ackley in this State to Chicago, Illinois. The cause was tried in the court below without a jury, and upon an agreement as to facts, and judgment was rendered for the defendant for costs. Plaintiffs appeal.

*Huff & Reed* and *Brown & Carney*, for appellants.

*John F. Duncombe*, for appellee.

Rothrock, J.—I. It appears from an agreed statement of facts that between the 11th day of April, A. D. 1875, and the 14th day of April, 1876, the plaintiffs delivered to the defendant at Ackley, Iowa, to be shipped to Chicago, Illinois, through defendant; 129 car loads of wheat, and the defendant fixed the price and charged for freight thereon from Ackley to Chicago thirty-seven cents per 100 pounds, or $74 per car load of 20,000 pounds; and between April 14th, 1876, and March 11th, 1878, one hundred and twenty cars more, for which the defendant received and charged for shipment the same rate. The grain was loaded at Ackley in cars furnished by the defendant and carried through in bulk to Chicago in a continuous shipment. All of the cars were billed through from Ackley, Iowa, to Chicago, Illinois, and the defendant fixed the rate of freight and gave plaintiffs through shipping receipts to Chicago.

It is claimed that the freight thus charged and paid by the plaintiffs was in excess of that authorized by the laws of Iowa at that time in force; that the distance from Ackley, by defendant's road, to Dubuque on the Iowa State line is 132 miles; and the distance from Dubuque to Chicago by defendant's line is 202 miles, making a total distance through both

states of 334 miles, and that the rate of freight fixed by the law of Illinois was at that time less than the rate fixed by the statute of Iowa. Damages are claimed for the difference between what was authorzed by the law of Iowa to be charged for the transportation, for the whole distance, also for attorney's fees for prosecuting the action.

It is claimed by counsel for the defendant that the law of

1. RAILROADS: legislative regulation of rates: interstate commerce: constitutional law.

Iowa then in force, being chapter 68 of the acts of the Fifteenth General Assembly, by its plain language and meaning had no application to contracts made for the transportation of freight into other states. Section three of that act, so far as applicable to this case, is as follows:

"The tariff of rates established in the following schedule shall be considered the basis on which to compute the compensation for transporting freights, goods, merchandise or property over any kind of railroad within this State  *   *. "

Some of us think this language excludes contracts for the transportation of freight to points without the State, but as the plaintiffs claim that these were contracts made in Iowa for through shipments to Chicago, and that by tacking the law of Illinois to the law of Iowa thus making it one continuous haul, the rate for the continuous haul being in excess of that authorized by the law of Iowa, such excess may be re-recovered back. We think it is not necessary to put a construction upon the law of this State in this regard, but rest our decision upon another ground.

It is claimed by the defendant that whatever construction may be put on the law of this State, it can have no application to shipments of freight from this State to other states, because State legislation of that character is void as being contrary to Article 1, Section 8, of the Constitution of the United States, which confers upon Congress the power "to regulate commerce with foreign nations, and among the several states." Now if this position be correct it is needless to enter into a discussion of all the questions, so elaborately and ably discus-

sed by counsel in this case. If the law of Iowa, conceding that it contemplates the control or regulation of shipment of freight to other states, is in that particular void, as being an infraction of the federal Constitution, it cannot be enforced, and the defendant was not bound to obey it, and could fix its own freight tariff, and the plaintiffs cannot recover for a violation of the statute, whatever other rights they may have.

It is not claimed that the fixing of rates of freight shipped from one State into another is not a regulation of commerce. "Any regulation of the transportation of freight upon the high seas, the lakes, the rivers, or upon the railroads, or other artificial channels of communication, is a regulation of com‿erce itself." *The City of Council Bluffs v. The K. C., St. J. & C. B. R. Co.*, 45 Iowa, 338. This has been repeatedly held by the Supreme Court of the United States. *Reading Railroad Co. v. Pennsylvania*, 15 Wallace, 232; *Passenger Laws*, 7 Howard, 283; *State of Pennsylvania v. Wheeling Bridge Co.*, 18 Howard, 421; *Gibbons v. Ogden*, 9 Wheat, 1.

There is a line of cases determined by the Supreme Court of the United States, which hold that it is competent for the states, in the absence of legislation by Congress, to legislate respecting inter-state commerce. But those cases have been such as relate to bridges or dams across streams wholly within a State, police laws, laws relating to pilots of vessels, health laws, and the like. See *Cooley v. Board of Wardens*, 12 Howard, 299; *Gilman v. Philadelphia*, 3 Wallace, 713.

But that court has always held that the power to enact laws upon subjects in their nature national, and not merely local, is exclusively with Congress. In *Cooley v. Board of Wardens, supra,* it is said: "Whatever subjects of this power are in their nature national or admit of one uniform system or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by Congress."

That the act of this State assuming that its object and purpose was to control and regulate the shipments of freight

to other states is of the character last defined, appears to us to be very clear, and we are not without authority upon this question, and from a source which so far as questions involving the construction of the Federal Constitution are involved, are binding upon this court, and all other courts in the Union.

The legislature of the State of Pennsylvania enacted a law imposing a tax upon freight taken up within the State and carried out of it, or taken up without the State and carried within it. The Pennsylvania Railroad Company refused to pay the tax upon the ground that the law was unconstitutional and void, in conflict with the Constitution of the United States which ordains that "Congress shall have power to regulate commerce with foreign nations and among the several states." In the case of the *State Freight Tax*, 15 Wallace, 232, involving the validity of this act, it was held that the tax imposed thereby was upon the freight carried, and that it was a regulation of inter-state transportation or commerce among the states. The court in that case say: "If, then, this is a tax upon freight carried between states and a tax because of its transportation, and if such tax is in effect a regulation of inter-state commerce, the conclusion seems to be inevitable that it is in conflict with the Constitution of the United States."

In *Henderson v. The Mayor of New York*, 92 U. S., 272, the following language is used: "It is said, however, that under the decisions of this court there is a kind of neutral ground, especially in that covered by the regulation of commerce, which may be occupied by the State, and its legislation be valid so long as it interferes with no act of Congress, or treaty of the United States. Such a proposition is supported by the opinions of several of the judges in the *Passenger Cases;* by the decisions of this court in *Cooley v. The Board of Wardens*, 12 Howard, 299; and by the cases of *Crandall v. Nevada*, 6 Wall., 35; and *Gilman v. Philadelphia*, 3 Wall., 713. But this doctrine has always been con-

troverted in this court, and has seldom, if ever, been stated without dissent. These decisions, however, all agree, that under the commerce clause of the Constitution, or within its compass, there are powers, which, from their·nature, are exclusive in Congress; and in the case of *Cooley v. The Board of Wardens,* it is said that whatever subjects of this power are in their nature national, or admit of one uniform system or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by Congress."

In the case of *Railroad Company v. Maryland,* 21 Wall., 456, it was determined that the charter of the Baltimore and Ohio Railroad Company for constructing and operating a branch railroad from Baltimore to Washington, upon a stipulation contained in the charter that the company should pay the State of Maryland one-fifth of the amount of money received for the transportation of passengers, was not an infraction of the Federal Constitution as being a regulation of inter-state commerce. It is there said: "The exercise of power on the part of the State is very different from the imposition of a tax or duty upon the movements or operations of commerce between the states. Such an imposition, whether relating to persons or goods, we have decided the states cannot make, because it would be a regulation of commerce between the states in a matter in which uniformity is essential to the rights of all, and therefore requiring the exclusive legislation of Congress."

In that case the State of Maryland in granting the charter especially reserved the right to part of the earnings of the road, and the power to do so was upheld upon the principle that if the State had itself built the road and operated it, it would have been entitled to its earnings.

The cases of *State v. Munn,* 94 U. S., 113; *C., B. & Q. R. R. Co. v. Iowa,* Id., 155; and *Peck v. C., & N. W. R. R. Co.,* Id., 164, do not appear to us to sanction the validity of acts of the State legislature regulating the transportation of freight and passengers between the states. They merely

determine the power of the states to fix reasonable warehouse charges, and reasonable charges for transportation of freight within the boundaries of the states respectively, and that when such power is exercised, although it may incidently affect commerce between the states, yet the laws of the states are not regulations of inter-state commerce, because of such incidental results. That it was not intended in those cases to uphold legislation like that under consideration in this case it appears to us is conclusively shown by the reasoning in the later cases of *Hall v. De Cuir*, 95 U. S., 485; and *R. R. Co. v. Hannen*, Id., 465.

II. It is urged with great earnestness that these contracts of shipment are entire contracts, and having been entered into in Iowa, the laws of this State entered

2. —: —; : lex loci contractus. into and became a part of the contracts, and the statute fixing the rate governed the price for the entire distance. This rule is, no doubt, correct when applied to a valid enactment of the legislature of a State where a contract is entered into, and no one doubts the power of a common carrier to bind itself to ship freight beyond State lines or even to foreign countries and beyond the terminus of its line of transportation. Under such a contract it is everywhere held that the carrier is bound to perform his contract, and is liable for loss, by negligence. But this position of counsel, it seems to us, begs the question, because if the law of Iowa under consideration is an unauthorized regulation of inter-state commerce it cannot enter into and become part of any contract. This position of counsel forcibly illustrates the correctness of our conclusion that the law in question, if held to have been intended to operate upon inter-state traffic, is directly and palpably contrary to the constitution of the United States. If the law entered into and became part of the contract of shipment we would have a law of Iowa which would control and regulate the transportation of freight, not only to the remotest parts of the states and territories of this country, but extending to all the nations of

the earth to which lines of common carriers extend, and to which local carriers may undertake to transport goods. That such legislation is national in its character it seems to us must be conceded.

If we are correct in these views there is but little more necessary to be said in this case. The plaintiffs claim to recover because the amount of freight-money exacted by the defendant was in excess of the rate fixed by the law of Iowa. The contract of shipment was an entirety. It cannot be severed and made to apply partly to the shipment in Iowa and partly to that in Illinois. It was the right of the defendant to disregard any laws which sought to regulate shipments to points without the State, and make its own contracts. Having done so, the plaintiffs cannot recover under any State law, simply because it is void as being repugnant to the Federal Constitution. Whether the plaintiffs are entitled to any relief independent of the statute, we do not determine, because that question is not in this case.

AFFIRMED.

BECK, J., *dissenting.*—I. I am unable to concur in the arguments and conclusions announced in the preceding opinion of the court prepared by Mr. Justice ROTHROCK. The case is one of great importance, as the decision affects the interests of all the people of the State. This consideration has stimulated me in its careful examination with the purpose of preparing an extended discussion of the doctrines which, in my opinion, should control the decision of the important questions involved in the case. But I am unable, within the limited time which other judicial duties permit me to devote to the case, to carry out my purpose, and I am compelled to limit myself to a brief statement of the principles upon which I base my dissent to the opinion of the majority of the court.

II. It is shown by the record before us that the defendant received the grain shipped by plaintiffs for transportation to the city of Chicago. A contract was then entered

into by the defendant for the carriage of the grain from Ackley to Chicago. This contract was made in Ackley and is therefore subject to the laws of this State applicable thereto.

III. It is competent for the State to enact the statute in question, unless it should be found to be in conflict with the Constitution of the United States, as a regulation of commerce.

The statute is not in conflict with the federal constitution for the following reasons:

IV. Conceding the statute has the effect to regulate commerce, it is enacted in the exercise of a power which is vested concurrently in the State and National governments. And as it is not in conflict with any law of the United States, and as Congress has not enacted any statute upon the subject, it cannot be regarded as an encroachment upon the authority of the general government. Until Congress assumes the exercise of its authority over the subject of the statute in question, the State is free to legislate upon it.

V. In my opinion regulations of commerce which impose burdens and restrictions thereon, are only forbidden to the State by the Constitution of the United States.

The states are free to enact all laws which will aid in securing the expeditious and cheap transportation of property used in the commerce of the country. Of this character are statutes providing for the construction of the mediums of transportation of property, for its protection while in transit, and for the protection of the means of transportation used by common carriers. Enactments prescribing the duties and obligations of carriers are of the same character and class.

It must be remembered that railroads do not constitute commerce. They are means used by commerce. The corporations operating them are common carriers, employed in the commerce of the country. Burdens, impediments and restrictions may be imposed upon commerce by these common carriers. This may be done by unnecessary delays and unreasonable and unjust charges for carrying goods, and the

like. Statutes which remove burdens and restrictions imposed in this way upon commerce, which protect it from unjust exaction by common carriers, are not regulations of commerce within the contemplation of the Constitution of the United States. The statute of the State brought in question in this case is of this character. It was intended and it operated to protect and stimulate commerce by preventing oppression and discriminating charges for the transportation of property used in the commerce of this country.

These conclusions, in my opinion, are based upon doctrines well established by decisions of the United States Supreme Court and of this court.