GEORGE W. HARDY v. THE ATCHISON, TOPEKA & SANTA
FÉ RAILROAD COMPANY.

1. INTER-STATE COMMERCE; *Power of Congress, Exclusive.* Under art. 1,
§ 8 of the constitution of the United States, the power of congress to
regulate commerce among the states — inter-state commerce — which
consists, among other things, in the transportation of goods from one
state to another, is exclusive.

2. INTER-STATE COMMERCE, *to be Free.* The fact that congress has not
seen fit to prescribe any specific rules to control or regulate the transpor-
tation of goods from a place in one state to a place in another — inter-
state commerce — does not empower the states of the Union to regulate
such commerce. Its inaction on the subject, when considered with refer-
ence to its other legislation, is equivalent to a declaration that inter-state
commerce shall be free and untrammeled.

3. ———— *Query:* Has not congress legislated upon inter-state commerce
by the act of June 15, 1866, authorizing all railroad companies to trans-
port passengers and freight from state to state, and empowering them
to receive and accept compensation therefor? (Rev. Stat. of U. S. [1879,]
§ 5258.)

4. ———— *Maximum-Freight-Rate Law.* Section 57, ch. 23, Comp. Laws of
1879 — known as the *maximum-freight-rate law* of 1868 — had no applica-
tion to fix or limit the charges for transportation of freight from another
state into this state; because, if it was intended to apply to such inter-
state commerce, it was in violation of art. 1, § 8 of the constitution of the
United States, and therefore void.

*Error from Reno District Court.*

FEBRUARY 1, 1883, *Geo. W. Hardy* filed his bill of par-
ticulars with a justice of the peace of Reno county, demanding
judgment against *The Atchison, Topeka & Santa Fé Railroad
Company* for $100, alleged excessive charges made by the
company and paid by the plaintiff on goods, wares and mer-
chandise shipped by the plaintiff over the road of the com-
pany. Trial before the justice on February 12, 1883, the
defendant not appearing. Judgment was rendered in favor of
the plaintiff for $100 and costs. The railroad company ap-
pealed to the district court. At the September Term for 1883,
the case was tried by the court upon an agreed statement of

facts, a jury being waived.   The facts agreed upon are as follows:

"It is hereby stipulated and agreed in the above-entitled cause, that the same shall be submitted to the above court, at the present term, (September 21, 1883,) upon the following statement of facts, which it is agreed are all the facts in said cause, and the same shall be tried in this and all other courts upon the facts herein set forth, and no other, to wit:

"*First:* That each of the shipments of merchandise mentioned in plaintiff's bill of particulars was from St. Louis, Mo., under a contract there made for transportation through from St. Louis, Mo., to Hutchinson, Kansas, upon the usual through rates charged upon such class of goods from St. Louis, Mo., to Hutchinson, Kansas.

"*Second:* That the defendant received, under arrangement mutually agreed upon between it and the St. Louis & San Francisco Railroad Co., the sum of seventy-five cents on first-class freight; sixty-two on second-class freight; fifty-four on third-class freight; forty-seven on fourth-class freight; thirty-seven cents on Class 'A;' Class 'B,' twenty-three cents; Class 'C,' nineteen cents per hundred pounds, on freight mentioned in plaintiff's bill of particulars, shipped *via* Halstead station; and by mutual arrangement with the Missouri Pacific Railway Co., received on all freights mentioned in said plaintiff's petition, shipped *via* Emporia Junction, the sum of, first-class, seventy-eight cents per hundred pounds; second-class, seventy cents; third-class, sixty cents; fourth-class, forty-one; Class 'A,' forty; Class 'B,' twenty-five; Class 'C,' twenty.

"*Third:* That the through rates for all freight mentioned in said plaintiff's petition, and charged and collected by said defendant, were in every instance the same as charged by mutual arrangements of all railroads connecting with said defendant's railroad, for similar shipments from St. Louis to Hutchinson.

"*Fourth:* That the through rate for said shipments is in all cases made up by adding to the rate agreed upon by the Southwestern Pool Association from St. Louis to the Missouri river, the rate of said defendant from the Missouri river to Hutchinson; and by mutual arrangement between said defendant and the St. Louis & San Francisco R. R. Co. and the Missouri Pacific R. R. Co., said through rate is divided between said defendant and said railroads, where freights are delivered to said defendant west of the Missouri

river, by allowing to said defendant the proportion of said rates mentioned in the second article of this agreement.

"*Fifth:* The through rate as made up as above stated, from St. Louis to Hutchinson, is—first class, $1.52 per hundred pounds; second class, $1.27; third class, $1.02; fourth class, eighty-two cents; Class 'A,' sixty-one cents; Class 'B,' forty-nine cents; Class 'C,' thirty-nine cents: which rate was charged over every road out of St. Louis by whatever route the same was delivered to defendant.

"*Sixth:* The rate charged by defendant for freights from Kansas City, Mo., to Hutchinson, Kansas, two hundred and thirty-four miles, was as follows for through freight: First class, eighty-seven cents per hundred pounds; second class, seventy-seven cents; fourth class, fifty-seven cents; Class 'A,' forty-four cents; Class 'B,' twenty-nine cents; Class 'C,' twenty-four cents.

"*Seventh:* That the rates charged by defendant on local shipments from Emporia to Hutchinson are as follows, to wit: First class, sixty-three cents per hundred pounds; second class, fifty-six cents; third class, fifty cents; fourth class, forty-two cents; Class 'A,' thirty-two; Class 'B,' twenty-two; Class 'C,' nineteen.

"*Eighth:* That the rates charged by defendant from Halstead to Hutchinson, were as follows: First class, twenty-four cents per hundred pounds; second class, twenty cents; third class, eighteen cents; fourth class, fourteen cents; Class 'A,' twelve cents; Class 'B,' eight cents; Class 'C,' eight cents.

"*Ninth:* That the through rate on all shipments mentioned in plaintiff's bill of particulars charged by said railroads, and collected by said defendant, and divided between said defendant and said railroads as above set forth, was in every instance less than the sum of the local rates from St. Louis to Emporia or Halstead respectively, added to the local rates of said defendant from Emporia or Halstead to Hutchinson respectively, as set forth in the seventh and eighth clauses of this agreement.

"*Tenth:* That the local rates for all of said shipments from St. Louis to Halstead were as follows, to wit: First class, $1.48 per hundred pounds; second class, $1.23; third class, ninety-eight cents; fourth class, seventy-eight cents; Class 'A,' sixty-eight cents; Class 'B,' forty-nine cents; Class 'C,' thirty-eight cents.

"*Eleventh:* That the local rates from St. Louis to Emporia were as follows, to wit: First class, $1.20 per hundred pounds;

second class, ninety-five cents; third class, seventy-five cents; fourth class, fifty-eight cents; Class 'A,' fifty cents; Class 'B,' forty cents; Class 'C,' thirty cents.

"*Twelfth:* That if the plaintiff recovers anything in this action, he shall recover an amount equal to the amount received by defendant, or its proportion of the through rate on said shipments, less the amount of its local rates from the point where said goods were delivered to it by the connecting line to Hutchinson, as hereinbefore set forth.

"*Thirteenth:* That neither party to this agreement admits that any of the facts herein set forth and agreed to are relevant or material to this case, and hereby preserves all rights of objecting and excepting to the relevancy or materiality of the same.

"*Fourteenth:* That the defendant admits that it received of the said plaintiff the amounts set forth in said plaintiff's petition for the freight shipped as herein set forth, which were demanded by defendant prior to a delivery of said freight, and plaintiff was compelled to pay the same in order to get possession of said goods. That plaintiff demanded of defendant a return of the difference between the prices charged and paid and the statutory rate for local freight between said points on the Santa Fé railroad.

"*Fifteenth:* That the distance between Emporia Junction and Hutchinson, both points on the Santa Fé railroad, and in the state of Kansas, is 106 miles.

"*Sixteenth:* That the distance between Halstead and Hutchinson is 22 miles; that both of said points are on defendant's road, and within the state of Kansas.

"*Seventeenth:* That it is agreed that the statutory rate, local tariff rate, and through rates, of the Santa Fé road are all in issue as far as they may be deemed competent by the court under the objections as heretofore set out.

"*Eighteenth:* By virtue of the location of the defendant's road, and favors it is enabled to extend to the St. Louis & San Francisco railroad and the Missouri Pacific railroad, the defendant receives more than its mileage proportion of the through rates above set forth from St. Louis to Hutchinson, on all through shipments over said roads from St. Louis to Hutchinson.

"*Nineteenth:* That on said shipments only one receipt, or bill of lading, is issued to the shipper; but that each company issues its own way-bill to and from the connecting point; that

each company is liable for loss and damages that occur on its own road only.

"*Twentieth:* That all of said shipments were prior to the repeal of the maximum-freight-rate law."

The court rendered judgment for the defendant. The plaintiff excepted, and brings the case here.

*James McKinstry,* for plaintiff in error:

The limitation in the contract for shipment that neither the St. L. & S. F. Rld. Co. nor the defendant in error should be liable for any loss or damage not occurring on its own road, makes the first company a mere forwarder of the freight. Were it a through contract, this limitation could not be in it, as under a through contract, the first company might be sued for a loss occurring on any of its connecting lines. A guaranty of a through rate by one company does not bind connecting lines, nor does it constitute a through contract. (*Sherman v. Hudson River Rld. Co.*, 64 N. Y. 254; *Schneider v. Evans*, 25 Wis. 241; *Burroughs v. N. & W. Rld. Co.*, 100 Mass. 26, and cases there cited; *St. Louis Ins. Co. v. Vandalia Rld. Co.*, 104 U. S. 146; *Myrick v. Michigan Cent. Rld. Co.*, 107 id. 102.) The law as laid down in these cases puts the plaintiff and defendant in the same relation to each other in which they would be had the defendant received the goods directly from the plaintiff at Halstead station, to be shipped as local freight from there to Hutchinson. The defendant admits that it violated one of the public laws of Kansas, but says it did so under an arrangement with another road doing business in this state. These roads were both bound to obey the laws of the state of Kansas; the one had promised by accepting its existence from the state, and the other promised when it came into the state to do business, to obey all public laws thereof.

Counsel for the company may claim that it has a right to charge whatever it chooses, under its charter, which says that the company may fix rates of toll. But a grant of that kind means that the railroad company or corporation can use its

discretion, within the limits of the laws of the state creating it. The power to regulate by law is always reserved by the state, in granting charters. (*Ruggles v. Illinois*, 108 U.S. 526.) The charges made by the company were within the prohibition of the statute prescribing maximum rates, for the reason that both railroad companies were bound to take notice of this law, and make their rates between points within this state conform to the rates fixed by statute. Any arrangement whereby they would be permitted to do anything else, is *ultra vires*, and void. (*Rld. Co. v. The People of Illinois*, 12 Am. and Eng. Rld. Cases, 10.)

The defense attempted in this case amounts to simply this: That the Santa Fé railroad company had such arrangements made with all St. Louis connections, as to make it impossible for the shipper to get goods to any point on its road at a less rate than the one which defendant in error admits is almost three times as great as its local schedule rate, made and published by itself, and by which it is bound. The shipper had a perfect right to rely upon its published schedule rate, being all that it would charge for its part of the through business. But whether defendant in error had or had not published a schedule of rates, can make no difference, as the shipper had a perfect right to rely on the legal rate fixed by law, which was practically the same as the company's schedule rate for local freight.

All such arrangements between the St. L. & S. F. Rld. Co. and the Santa Fé are void, for the reason that both these roads are bound to take notice of all public laws of the states through which they pass and do business, as much as any natural citizen is. (3 Addison on Contracts, § 1333; 2 Parsons on Contracts, 673–675.) If maximum-freight-rate laws are in force in a dozen different states through which connecting lines do business, each company in making up the through rate can comply with the laws of the state or states through which its part of the work is done; and then the through rate will be the sum of the rates fixed by the several legislatures.

The decision in *Keiser v. Ill. Cent. Rld. Co.*, 16 Am. and Eng.

Rld. Cases, 40, is based upon a question of inter-state commerce, which cannot arise under the agreed statement of facts in this case.

. That § 57, ch. 23, Comp. Laws of 1879, is applicable to these shipments, there can be no doubt. We assume that the power of legislatures to fix maximum rates is now well settled, and that to do so in nowise interferes with a company's rights under its charter, which says it shall have power to regulate rates of toll, by by-laws or otherwise. (*Blake v. Rld. Co.*, 19 Minn. 418; 18 Am. Rep. 345.) The rule of construction governing in construing a charter, is, to construe it liberally toward the public and strictly as to the grantee. ·

A party is never estopped from pleading illegality of a contract with a railroad company, or want of power in the company to make such contract, where the contract is by law prohibited. (*New York Firemen's Ins. Co. v. Ely*, 13 Am. Dec. 100, and notes, pp. 108, 109.) Another proposition well settled is, that *assumpsit* lies to recover money extorted by duress of goods. (*Corkle v. Maxwell*, 3 Blatchf. 413; 2 Strange, 915; 3 Johns. Cases, 238; 4 T. R. 485, 561; 7 Greenl. 134.) The agreed statement of facts admits that the excess in this case was paid under duress, and that it was afterward demanded prior to the commencement of this action.

It is now well settled that railroad companies have no right to discriminate between points, to the prejudice of some stations. The agreed statement of facts shows that a discrimination is made against a shipper who ships by way of Emporia or Halstead, and in favor of shippers at other local points, at greater distances than these stations. (*C. & A. Rld. Co. v. People*, 67 Ill. 11; 15 Am. Rep. 599.) Courts will not aid corporations in violating the law. (*United States Bank v. Owens*, 2 Pet. 527.)

*A. A. Hurd, Robert Dunlap,* and *John Reid,* for defendant in error:

Plaintiff claims that the maximum-freight-rate law (§ 57, ch. 23, Comp. Laws, 1881) is applicable, and shall govern in the rate that portion of the haul which was over defend-

ant's road in Kansas. It will be seen by the stipulation that the contract was made in Missouri for a through transportation from St. Louis to Hutchinson, an entire through rate fixed, and but one bill of lading issued. The way-bill is always issued by each line to accompany the goods, and by which ·employés may check off the articles. Upon the through rate or charge fixed, or any part thereof, the maximum-freight law can have no operation. If it were intended to have such effect, it would be void, as an attempt to regulate inter-state commerce. A state law can have no effect in the regulation of the rate or charge for freight transported from a point in a state to a point outside, or from a point outside to a point within. The power to regulate the charge for the transportation of such freight resides exclusively in congress.

Under a similar state of facts the Iowa statute was held unconstitutional, not only by Judge McCrary in *Keiser v. Ill. Cent. Rld. Co.*, 18 Fed. Rep. 151, but also by the supreme court of Iowa in *Carton v. Ill. Cent. Rld. Co.*, 59 Iowa, 148. The decision of Judge McCrary is approved by Judge Hammond in his clear and exhaustive opinion on the subject of inter-state commerce, in the case of the *Louisville &c. Rld. Co. v. Railroad Comm'rs of Tennessee.* The syllabus only is published, in 18 Central Law Journal, p. 201. The opinion itself is an exhaustive and discriminating review of the whole subject and the authorities bearing thereon. He lays it down that —

"Any state law . . . which acts upon the *contract for inter-state transportation* between the carrier and shipper to regulate the *charges* for it, or *any part of it*, or the conditions thereof in any respect, operates directly on the commerce itself, of which the transportation is certainly a part, and not on an instrumentality of it."

And it was held that an act of the legislature of Tennessee, which attempted to control the rates for faires and freights of persons and commodities passing over the road (the one a Kentucky and the other a Tennessee corporation) from one state into another, on the theory of regulating the charges for

45—32 KAS.

the distances traveled within the state of Tennessee, is invalid as a regulation of inter-state commerce.

The same view had been held by Mr. Justice Field, in *Pacific Coast Steamship Co. v. Board of Railroad Comm'rs,* 18 Fed. Rep. 10, 12, 13, where it appeared, in going from one port to another in the state of California, it was necessary for the steamship to go beyond a marine league from the land, and hence beyond the jurisdiction of the state. (See also *The Daniel Ball,* 10 Wall. 565.)

In the case of the *State Freight Tax,* 15 Wall. 232, the objection was raised to that portion of the state tax upon merchandise carried, which was levied for articles destined for a point beyond the state. The articles were transported by the Reading railroad company from a point in the state of Pennsylvania to a point on the Schuylkill canal, where they were loaded in barges and exported beyond the state. The transportation being continuous, the tax was held to be a regulation of inter-state commerce, and therefore void. (See also *The County of Mobile v. Kimball,* 102 U. S. 702; *Telegraph Co. v. Texas,* 105 id. 460.)

It clearly follows from the above, that any attempt on the part of a state to regulate or fix the charge for a part of the transportation of merchandise which is continuously carried from a point in one state to a point in another state, no matter what the agency of transportation may be, is not a regulation of the instrumentality only incidentally affecting commerce, but is a regulation of commerce itself.

The defendant sustained a contractual relation with the San Francisco road, its connecting line in this case. But one contract was made, a contract for through transportation by a single bill of lading, and under a single rate — a charge for through carriage from St. Louis to Hutchinson. The defendant, as a connecting line under contractual relation with the San Francisco line, and accepting those goods and hauling them, under the circumstances could not raise this price as to plaintiff. It is true, each company was liable for its

own torts, but this does not alter the contract so far as it is one for through transportation or through rate. The Santa Fé road acts as principal in one part and agent in another part of this contract of carriage. Where it is principal, it is liable for the torts of itself and its agent, the San Francisco line.; but where it acts as agent it is not liable for the torts of its principal, the San Francisco line, as in case of a loss happening on that line. So far as the through transportation and the rate or charge is concerned it is entire, and binds both lines. From the time the goods begin to be moved from St. Louis, in this contract for continuous transportation, until they are delivered at Hutchinson, being continuously carried they are the subject of commerce, and commerce between these two points, and over the charge of carriage from the one point to the other, or any portion thereof, the state has no control, and it would make no difference though twenty different agencies were used in this transportation; it begins in one state and ends in the other, under an entire single rate fixed upon for the through transportation. For if any one state can fix the price to be charged for the haul in that particular state, then the through rate or charge must necessarily depend upon the regulation of the different states; and where a contract for a through rate of transportation between points in different states was entered into, any state might legislate what was proper to be received for the haul in that state, and thus the states themselves would regulate this subject of inter-state commerce.

What arrangement the defendant and the San Francisco road may have as to a division of the charge for carriage, can be of no concern to plaintiff. If the San Francisco road chooses to pay in this manner for benefits received from defendant, it is the business of that road and not of plaintiff. When the San Francisco road objects, it will be time enough to consider that matter. If Peter hires Paul and Jack to do certain work at a fixed price, it can make but little difference to Peter how Paul and Jack may divide the proceeds; or whether Jack should, out of his share, pay Paul what he owes him.

*James McKinstry*, for plaintiff in error, in reply:

This cause was tried before the court below on an agreed statement of facts, at which time the defense conceded, as we understood it, that the question of inter-state commerce should not enter into the case. We are of the opinion that, under the agreed statement of facts, it is impossible for it to have any bearing in the case; but counsel for defendant rely wholly on that question, and in support of their position cite *Rld Co. v. Iowa*, 94 U. S. 155–163, and *Peik v. Rld Co.*, 94 id. 164–178. In the former case, the court says:

"The objection that the statute complained of is void because it amounts to a regulation of commerce among the states, has been sufficiently considered in the case of *Munn v. Illinois*. This road, like the warehouse in that case, is situated within the limits of a single state. Its business is carried on there, and its regulation is a matter of domestic concern. It is employed in state as well as inter-state commerce, and until congress acts, the state must be permitted to adopt such rules and regulations as may be necessary for the promotion of the general welfare of the people within its own jurisdiction, even though in so doing those without may be indirectly affected."

In what better condition is the Santa Fé? Is it not purely a Kansas concern, doing business here? And is it not as necessary for the welfare of the people of Kansas that it be regulated, as that the states of Iowa, Illinois, Wisconsin and other states be permitted to regulate the Chicago & Northwestern and Chicago, Burlington & Quincy?

The state may discriminate between local and extra-territorial freight. (*Shipper v. Rld. Co.*, 47 Pa. St. 338; *B. & O. Rld. Co. v. Maryland*, 21 Wall. 456–471; *W. & P. Rld. Co. v. Illinois*, 7 Am. and Eng. Rld. Cases, 628.)

Concede that states have the right to regulate freight rates of railroads, then the roads have no right to violate the law by any arrangement whatever, direct or indirect.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the agreed statement of facts that while the maximum-freight-rate law of 1868 was

in force in this state, the goods and merchandise mentioned in plaintiff's bill of particulars were shipped from St. Louis, Missouri, under a contract made there for transporting the same from St. Louis, Missouri, to Hutchinson, Kansas, upon the usual through rates charged upon such class of goods; that on the shipments of the goods, only one receipt or bill of lading was issued to the plaintiff; that the through rate for the freight charged and collected was, in every instance, the same as charged by mutual arrangements of all the railroads connecting with the defendant's railroad for similar shipments from St. Louis to Hutchinson; that in the division of the freight among the railroad companies transporting the goods, the Atchison, Topeka & Santa Fé railroad company received an amount thereof in excess of its ordinary local freight rates, and an amount in excess of that authorized by the maximum-freight-rate law of Kansas, at that time in force. (Comp. Laws of 1879, ch. 23, § 57.)

Plaintiff claims to recover the alleged overcharges paid by him for the transportation of his goods. It is admitted, if he is entitled to recover anything, he shall recover an amount equal to that received by the defendant, or its proportion of the through rate on the shipments, less the amount of its local rates from the point where the goods and merchandise were delivered to it by the connecting line to Hutchinson.

On the part of the railroad company it is contended that § 57, ch. 23, Comp. Laws of 1879, had no application to the transportation of freight from another state into this state. Sec. 57 is as follows:

"Every such railway shall arrange and classify all property usually carried by them over their roads, and shall affix thereto the rates respectively at which the same shall be transported between the several stations, or points of connection or intersection of other roads, which rate shall be per one hundred pounds, and shall not exceed, for distance less than fifty miles, twenty cents per ton per mile, fifteen cents per ton for second class, and ten cents per mile per ton for third-class articles; for distances of fifty miles and over, but less than one hundred miles, fifteen cents per ton per mile for second class, and seven

cents per mile for third-class articles; for distances of one hundred miles or more, ten cents per mile per ton for first class, eight cents per ton per mile for second class, and five cents per ton per mile for third or other classes."

The contention is, that any statute fixing or limiting the charges for transportation of goods from a place in one state to a place in another, is an attempt to regulate commerce between the states, and that such a statute is invalid as a regulation of inter-state commerce. In support of this it is asserted that the exclusive right to regulate inter-state commerce is expressly confided by the constitution of the United States to Congress by art. 1, § 8, which declares that: "The congress shall have power . . . to regulate commerce with foreign nations, *and among the several states,* and with the Indian tribes."

The federal courts have established that the transportation of merchandise from place to place by railroad is commerce; that the transportation of merchandise from a place in one state to a place in another is commerce among the states, or inter-state commerce; that to fix or limit the charges for such transportation is to regulate commerce; that a statute fixing or limiting such charges for transportation from places in one state to places in another, is a regulation of commerce among the states; that by the terms of the constitution of the United States, congress has the power to regulate such commerce. (*Keiser v. Ill. Cent. Rld. Co.,* 16 Am. and Eng. Railroad Cases, 40; *Louisville & N. Rld. Co. v. Railroad Comm'rs of Tenn.,* 16 Am. and Eng. Railroad Cases, 1; *Carton v. Ill. Cent. Rld. Co.,* 59 Iowa, 148, 6 Am. and Eng. Railroad Cases, 305, and the authorities there cited.)

The debatable question is, whether this power is concurrent with that of the states? Is the power of congress *exclusive?* May a state act until its legislation is superseded or interfered with by congress? May Kansas, in the absence of action by congress, control or regulate, within its limits, the charges for the transportation of goods shipped from another state, under a contract made in that state, to a place in this state? We

suppose it will be conceded that Kansas can pass no law which seeks to fix or limit the charges for the carriage of goods over the lines of its railroads which pass over its territory, but neither originate nor terminate within it; as, for instance, goods passing from Missouri to Colorado, Texas, or New Mexico. We suppose it will be conceded also, that it is beyond the power of Kansas to fix the whole charge for the carriage of goods from a point in the state to a point in another. This would be an attempt to give our laws an extra-territorial force. If, however, the power of congress to regulate commerce among the states — inter-state commerce — which consists, among other things, in the carriage of persons and the transportation of goods from one state to another, is exclusive, then §57 could not fix or limit the charges in controversy. This question is one upon which the decisions of the supreme court of the United States are final. We shall therefore refer to the more important of these adjudications:

In *Crandall v. State of Nevada*, 6 Wall. 35, a statute of Nevada which in effect laid a tax upon every traveler passing through or beyond its territorial limits, was adjudged to be invalid, but not on the ground that it was a regulation of inter-state commerce. Chief Justice Chase and Mr. Justice Clifford dissented from this conclusion, and pronounced the act to be a regulation of inter-state commerce exclusively within the jurisdiction of congress.

In the case of *The State Freight Tax*, 82 U. S. 232, a statute of Pennsylvania, which in effect laid a tax upon all freight taken up within the state and carried out of it, or taken up without and brought within it by any railway, was adjudged to be void. The decision was placed solely upon the ground that the law was a regulation of commerce among the states, and was invalid, although congress had never legislated in reference to the same subject-matter. Mr. Justice Strong, in delivering the opinion, said:

"The tax upon freight transported from state to state is a regulation of inter-state transportation, and therefore a regulation of commerce among the states. It is a rule prescribed

for the transporter by which he is to be controlled in bringing the subjects of commerce into a state and in taking them out. . . . If, then, this is a tax upon freight carried between states, and a tax because of its transportation, and if such tax is in effect a regulation of inter-state commerce, the conclusion seems to be inevitable that it is in conflict with the constitution of the United States. It is not necessary to the present case to go at large into the much-debated question, whether the power given to congress by the constitution to regulate commerce among the states is exclusive. In the earlier decisions of this court it was said to have been so entirely vested in congress that no part of it can be exercised by a state. It has, indeed, often been argued, and sometimes intimated by the court, that so far as congress has not legislated on the subject the states may legislate respecting inter-state commerce; yet if they can, why may they not add regulations to commerce with foreign nations beyond those made by congress, if not inconsistent with them, for the power over both foreign and inter-state commerce is conferred upon the federal legislature by the same words. And certainly it has never yet been decided by this court that the power to regulate inter-state, as well as foreign, commerce is not exclusively in congress. . . . Inter-state transportation of passengers is beyond the reach of a state legislature. . . . Merchandise is the subject of commerce. Transportation is essential to commerce; and every burden laid upon it is *pro tanto* a restriction. Whatever, therefore, may be the true doctrine respecting the exclusiveness of the power vested in congress to regulate commerce among the states, we regard it as established that no state can impose a tax upon freight transported from state to state, or upon the transporter because of such transportation."

In *Welton v. State of Missouri*, 91 U. S. 275, Mr. Justice Field said:

"It will not be denied that that portion of commerce with foreign countries and between the states which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation. The very object of investing this power in the general government was to insure this uniformity against discriminating state legislation. . . . . The fact that congress has not seen fit to prescribe any specific rules to govern inter-state commerce, does not affect the question. Its inaction on this subject, when considered with reference to its legislation with

respect to foreign commerce, is equivalent to a declaration that inter-state commerce shall be free and untrammeled."

In *Railroad Co. v. Husen*, 95 U. S. 465, Mr. Justice Strong said :

"Whatever may be the power of a state over commerce that is completely internal, it can no more prohibit or regulate that which is inter-state than that which is with foreign nations. Power over one is given by the constitution of the United States to congress in the same words in which it is given over the other, and in both cases it is necessarily exclusive. That the transportation of property from one state to another is a branch of inter-state commerce is undeniable, and no attempt has been made in this case to deny it. . . . . This court has heretofore stated that inter-state transportation of passengers is beyond the reach of a state legislature, and if, as we have held, state taxation of persons passing from one state to another, or a state tax upon inter-state transportation of passengers, is prohibited by the constitution because a burden upon it, *a fortiori*, if possible, is a state tax upon the carriage of merchandise from state to state. Transportation is essential to commerce, or rather, it is commerce itself, and every obstacle to it or burden laid upon it by legislative authority is regulation."

In *Hall v. De Cuir*, 95 U. S. 485, Chief Justice Waite said :

"We think it may safely be said that state legislation which seeks to impose a direct burden upon inter-state commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of congress. . . . If each state was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each state could provide for its own passengers and regulate the transportation of its own freight, regardless of the interest of others. Nay, more, it could prescribe rules by which a carrier must be governed within the state, in respect to passengers and property brought from without. On one side of the river or its tributaries, he might be required to observe one set of rules, and on the other, another. Commerce cannot flourish in the midst of such embarrassments."

In *The Telegraph Co. v. Texas*, 105 U. S. 460, Chief Justice Waite said :

"A telegraph company occupies the same relation to com-

merce as a carrier of messages, that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. . . . A specific tax on each message, so far as it operates on private messages sent out of the state, is a regulation of foreign and inter-state commerce, and beyond the power of the state."

. In *Steamship. Co. v. Board of Railroad Comm'rs*, 18 Fed. Rep. 10, Mr. Justice Field said:

"It was at one time a subject of discussion and some disagreement among judges whether the power conferred upon congress to regulate commerce is exclusive in its character, or concurrent with that of the states. By recent decisions, this question has been put at rest. When the subject upon which congress can act under this power is national in its character and admits and requires uniformity of regulation affecting alike all the states, then the power is in its nature exclusive; but when the subject upon which the power is to act is local in its operation, then the power of the state is so far concurrent that its action is permissible until congress interferes and takes control of the subject. Of the former class is all that portion of commerce with foreign countries and among the states, which consists in the carriage of persons and the transportation, purchase, sale and exchange of commodities. From necessity there can be but one rule in such cases for all the states, and the only power competent to prescribe a uniform rule is one which can act for the whole country. Its inaction in such cases is, therefore, an equivalent to a declaration that such commerce shall be free from state interference."

(See also *Pullman Southern Car Co. v. Nolan*, 19 Cent. L. J. 369; *Gibbons v. Ogden*, 9 Wheat. 1; *The Daniel Ball*, 10 Wall. 565; *City of Council Bluffs v. Rld. Co.*, 45 Iowa, 338; *Passenger Cases*, 7 How. 283; *State of Pennsylvania v. Wheeling Bridge Co.*, 18 id. 481; *Cooley v. Board of Wardens*, 12 id. 299; *Gilman v. Philadelphia*, 3 Wall. 713.)

From these authorities and the cases therein cited, we think it is *conclusively* settled that the portion of either inter-state or foreign commerce which consists in transit or traffic, including transportation in all forms, by land or by water, and the purchase, sale or exchange of goods, is national, and susceptible of a uniform plan of regulation, and is therefore under the ex-

clusive control of congress. Even if congress has not seen fit to prescribe any specific rules to govern inter-state commerce, that does not affect the question. "Its inaction on this subject, when considered with reference to its legislation with respect to foreign commerce, is equivalent to a declaration that inter-state commerce shall be free and untrammeled." (*The State v. Saunders*, 19 Kas. 127; *Welton v. State of Missouri*, supra.)

Our opinion is, therefore, that § 57—which was repealed by the legislature in 1883—if intended to apply to inter-state commerce, was in violation of the constitution of the United States, and therefore void.

The conclusion we have reached could not be disputed, were it not for the case of *Peik v. Chicago & Northwestern Rly. Co.*, 94 U. S. 164, and the language of the court in *Munn v. State of Illinois*, 94 U. S. 138, and *Railroad Co. v. Iowa*, id. 155. We confess it is difficult to reconcile these three cases with the principles which have been settled by the prior and subsequent course of decision of the United States supreme court, if they decide that, until congress acts in reference to inter-state commerce, the legislature of a state may regulate the transportation of freight and passengers among the states. These cases were decided in 1876, and the opinion in the Peik case was delivered by Chief Justice Waite; yet, in the case of *Hall v. De Cuir*, supra, decided the next year—1877—the chief justice quotes approvingly what was said by Mr. Justice Field, speaking for the court, in *Welton v. State of Missouri*, 91 U. S. 282, that "inaction [by congress] . . . is equivalent to a declaration that inter-state commerce shall remain free and untrammeled."

Referring to those decisions, the supreme court of Iowa, in *Carton v. Railroad Co.*, supra, uses the following language:

"The cases of *Munn v. State of Illinois*, 94 U. S. 113; *Railroad Co. v. Iowa*, id. 155; and *Peik v. C. & N. W. Rld. Co.*, id. 164, do not appear to us to sanction the validity of acts of the state legislature regulating the transportation of freight and passengers between the states. They merely determine

the power of the statutes to fix reasonable warehouse charges, and reasonable charges for transportation of freight within the boundaries of the states respectively, and that when such power is exercised, although it may incidentally affect commerce between the states, yet the laws of the states are not regulations of inter-state commerce because of such incidental results. That it was not intended in those cases to approve legislation like that under consideration in this case, it appears to us is conclusively shown by the reasoning in the later cases of *Hall v. De Cuir*, 95 U. S. 485, and *Railroad Co. v. Husen*, id. 465."

In the case of *L. & N. Rld. Co. v. Rld. Comm'rs of Tenn.*, supra, Hammond, J., in commenting on the Peik case, says :

"In the Wisconsin case, the next in the series of the granger cases, the court mainly deals again with what were evidently considered by all more important questions. Circuit Judge Drummond tells us the question was scarcely argued at all in the court below, and evidently it was only incidentally considered in the supreme court, 6 Biss. 177. The Wisconsin act, unlike ours, contained an exception which excluded from its operation all rates of charges for 'carrying freight which comes from beyond the boundaries of the state, and to be carried across or through the state.' Possibly, notwithstanding its terms, the act may have been construed, within the purview of this exception, not only to persons and property coming from other states into Wisconsin or going from that into other states, which was not thought, however, to be its construction in the court below, though the question whether it could so apply under the *State Freight Tax Cases*, 15 Wall. 232, was reserved and not decided in that court."

In the Peik case, the chief justice speaks of the power of Wisconsin to regulate its fares, etc., so far as they are a domestic concern, even though, incidentally, they may reach beyond the state. Clearly, a statute of the state prescribing rates of freight for goods, which shall be binding upon the railroad companies with respect to goods brought from another state, is a regulation of inter-state commerce as much as a law imposing a tax upon such goods. Therefore it cannot be said that such a statute acts *incidentally*. It acts directly upon a commerce which is inter-state. It does not, like laws impos-

ing a tax upon gross receipts from traffic, affect such commerce *indirectly*. It assumes to regulate and control it as commerce, and has no other object and design. Therefore we cannot say, as was stated in the Peik case, that said § 57, if intended to apply to inter-state commerce, *merely incidentally*, affected such commerce.

We have examined the case of *The People v. W. St. L. & P. Rld. Co.*, 104 Ill. 476. That portion of the case that is in any way applicable to this is largely based upon the construction given by that court to the three cases cited, and reported in 94 U. S. Rep. For the reasons before stated, we think the supreme court of the United States never intended to establish the doctrine as broadly as contended in the Illinois case.

Thus far we have discussed the question presented as though congress had remained entirely passive upon the subject. Such, however, is not the fact. In 1866 it passed an act authorizing all railroad companies to transport passengers and freight from state to state, and empowering them to receive and accept compensation therefor. It seems to us that the existence of this statute must be considered in discussing the power of a state to regulate inter-state commerce. (See 14 U. S. Statutes-at-Large, 66 ; Rev. Stat. of U. S. [2d ed. 1878], p. 1017, § 5258.)

If congress undertook by this statute to legislate upon inter-state commerce, the exceptional decisions of the United States supreme court decided in 1876, including the Peik case, do not militate in the slightest degree against the views announced herein. That each railroad company in the case before us issued its own way-bill to and from the connecting point with the defendant, and that each company was liable for the loss and damage occurring on its own road only, does not affect the question of inter-state commerce. From the time the goods began to be moved from St. Louis, Mo., until they were delivered at Hutchinson, in this state, they were the subject of commerce, and commerce among states, and therefore inter-state commerce.

After a careful consideration of the whole record, and the

important questions involved, we decide that the plaintiff is not entitled to recover. The judgment, therefore, of the district court, must be affirmed.

All the Justices concurring.